UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony William FAIRCHILD,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William E. LAMBERT, Defendant-
Appellant.

Nos. 106–70, 107–70.

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1970.

Rehearings Denied Jan. 25, 1971.

John E. Green, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., on the brief), for plaintiff-appellee.

Judd L. Black, Oklahoma City, Okl., for defendant-appellant Anthony William Fairchild.

Norman A. Smith, Oklahoma City, Okl. (Richard A. Procter, Oklahoma City, Okl., on the brief), for defendant-appellant William E. Lambert.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and BRATTON, District Judge.

McWILLIAMS, Circuit Judge.

Fairchild and Lambert were jointly charged in a three count indictment with the unlawful receipt and possession of stolen mail matter and conspiracy. More specifically, in Count 1 of the indictment Fairchild and Lambert were charged with unlawfully receiving, concealing and having in their possession on or about May 26, 1969, the contents of a certain bag for mail which had theretofore been stolen, such contents being 1800 shares of Standard Oil Company of Indiana common stock and 7 described U. S. Smelting, Mining and Refining debenture bonds, knowing that such stocks and bonds had been stolen, all in violation of 18 U.S.C. §§ 2 and 1708. Included in Count 1 was the allegation that Fairchild and Lambert each aided and abetted the other in his receipt and possession of the described stocks and bonds. By Count 2 Fairchild and Lambert were similarly charged with unlawfully receiving and possessing on or about June 5, 1969, certain other described stocks which had been stolen from a mail receptacle or authorized depository for mail, and which they knew had been so stolen. Count 3 charged the two defendants during the period of time from May 12, 1969, to June 5, 1969, with conspiring to commit certain described criminal offenses against the United States.

Fairchild was convicted by a jury on all three counts and the sentences thereafter imposed are to be served concurrently. Lambert was acquitted on Count 1, but convicted on Counts 2 and 3 and the sentences imposed on him are also to be served concurrently.

Fairchild contends that because of some fifteen alleged errors on the part of the trial court he was deprived of a fair and impartial trial and that his conviction should therefor be set aside in the interest of doing justice. Lambert argues that the trial court erred in some six different particulars, four of which are included in Fairchild's list of alleged errors. Many of the matters urged upon us were not in any way, shape or form presented to the trial court. Ordinarily matters not urged to the trial court will not be considered by us on appeal. Fed. R.Crim.P. 51. Troutman v. United States, 100 F.2d 628 (10th Cir.). Recognizing that under Fed.R.Crim.P. 52(b) we may nonetheless notice plain errors or defects affecting a defendant's substantial rights even though they were not brought to the attention of the trial court, in the instant case we elect not to notice those matters not presented to the trial court for the reason that none constitutes plain error affecting any substantial right of either Fairchild or Lambert. Certain matters presented to the trial court, however, do merit discussion.

Several weeks prior to trial Fairchild and Lambert, who will sometimes be referred to collectively as the defendants, filed a motion for a continuance of the trial date. The primary reason for so asking was the belief that because of so-called massive, prejudicial pretrial publicity the defendants could not receive a fair trial, and a secondary reason was the fact that counsel desired additional time to prepare for trial. This motion was granted, and the trial was set over one week. Defendants now argue, however, that it was error for the trial court to grant them only a one-week continuance.

A motion for continuance is addressed to the sound discretion of the trial court, and even the denial of such a motion will not constitute prejudicial error unless there be an abuse of that discretion. Leino v. United States, 338 F.2d 154 (10th Cir.). In the instant case there was no such abuse of discretion. There was no showing of massive, prejudicial pretrial publicity such as to bring it within the ambit of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. As a matter of fact, as was the situation in Welch v. United States, 371 F.2d 287 (10th Cir.), cert. denied 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303,

none of the jurors who served had ever heard of the case or read about it, and of all the jurors examined on voir dire, only two had ever heard of the case and they were peremptorily challenged.

■ The showing that counsel needed more time to prepare for trial was also insufficient. Counsel for each of the defendants had been in the case for many weeks prior to trial and the record of the trial itself indicates that counsel were indeed quite ready. There was no error in only granting defendants a one-week continuance.

Lambert filed a motion for severance, which was denied, and such is now claimed to constitute a ground for reversing his conviction. The grounds contained in this motion were: the "insurmountable difficulty" in distinguishing Lambert's actions from those of Fairchild's; that evidence "may be" introduced against Fairchild which would not be admissible against Lambert; and that evidence "may be" introduced by Fairchild which would not be admissible against Lambert if he were granted a separate trial.

■ A motion for a severance is also addressed to the sound discretion of the trial court. United States v. Rodgers, 419 F.2d 1315 (10th Cir.). Fed.R.Crim.P. 8(b) permits the joinder of two defendants in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. The allegations of the indictment in the instant case meet that requirement, and the prosecution's evidence produced upon trial amply supported the allegations. Fed.R.Crim.P. 14 provides that a trial court may grant a severance if it appears that a defendant is prejudiced by joinder with another defendant. Our review of the record convinces us that there was no such prejudice as would require a severance and that the reasons given by Lambert why he should have been granted a separate trial did not materialize upon trial. As was said in Sullins v. United States, 389

F.2d 985 (10th Cir.), not only is a motion for a severance a matter lying within the sound discretion of the trial court, but "even less will it be an abuse of [such] discretion to deny severance at the trial to come at which there will be no evidence of inculpatory statements of one defendant perhaps involving another." As will be later developed, we believe that to be the case here. We find no error in the trial court's denial of the motion.

■■ Prior to trial, and again during trial, Fairchild moved to require the prosecution to elect as to whether it would proceed against them on Count 1 or Count 2. His argument is that since all of the stocks and bonds described in both counts were stolen in one theft, there could be only one unlawful receipt and possession of the same. In this regard counsel cites Williams v. United States, 385 F.2d 46 (5th Cir.), where it was stated that a theft of various pieces of mail from one mailbag constitutes but one offense. Granted that the prosecution's evidence showed that all of the stocks and bonds described in Counts 1 and 2 were stolen in one transaction, it does not necessarily follow that there could be only one unlawful receipt and possession on the part of Fairchild, nor is the fact that Fairchild offered some evidence tending to show that there was only one receipt and possession on his part necessarily decisive of the matter. And certainly as concerns Lambert, the prosecution's evidence clearly established, prima facie, *two* unlawful receipts and possessions, one on May 26, 1969, and another on June 5, 1969 when he received certain stocks sent by Fairchild to replace the earlier stocks and bonds which had been determined to be "hot." As mentioned earlier, Fairchild was charged with aiding and abetting Lambert in each of Lambert's separate and distinct "possessions," and the evidence showed that he indeed did. We believe this case to be akin to Wilburn v. United States, 326 F.2d 903 (5th Cir.), and we find no error in the refusal of the trial court to require the prosecution to elect between

Counts 1 and 2 as concerns Fairchild. Additionally, any possible error could not be prejudicial since the sentences on Counts 1 and 2 are to be served concurrently. Hence, this is not the situation where a defendant is conceivably receiving two sentences for but one offense.

Both defendants complain that the trial court erred in failing to instruct the jury as to how it should handle the alleged statements made by each of the defendants when arrested. It is asserted that the jury should have been informed that though such statements might be used against the declarant, they could not be considered in connection with a co-conspirator, since when the arrest occurred the conspiracy was necessarily at an end. See Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278. The record, however, does not bear out the initial premise upon which counsel's argument is predicated.

■ Lambert was arrested at an Oklahoma City airport while picking up the stocks which formed the basis for Count 2 of the indictment. A postal inspector testified concerning the arrest and Lambert's statements to the inspector at the time of his arrest were minimal and in reality did not tend to incriminate either Fairchild or himself. It is true that this inspector had conversed with Lambert a day or two *before* his arrest, but that was at a time when, according to the prosecution's theory of the case, the conspiracy was in full flower.

As concerns Fairchild, he was arrested a day or two after Lambert, but in Phoenix, Arizona. The postal inspector who effected this arrest testified as to the details thereof. This witness did testify that Fairchild stated that he had received the stocks and bonds in question from one Charles Procacci. The prosecution's evidence established beyond doubt that Fairchild informed Lambert and several others, however, that the stocks were obtained from a family trust. Clearly, Fairchild's statement as to the source from which he obtained the stocks and bonds was admissible as concerns himself, and this statement could in no way be deemed as incriminating Lambert. In fact, it strengthened Lambert's theory of the case that he was but an innocent victim who himself in fact had been taken in and deceived by Fairchild. As indicated, the prosecution's evidence showed that Fairchild informed Lambert, as well as others, that the stocks and bonds were from a family trust and Lambert himself took the stand and testified to that very same effect. The instant case we therefore believe to be readily distinguishable on the facts from Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and we find no error in the trial court's handling of the testimony concerning the statements made by Fairchild or Lambert at the time of their respective arrests.

Lambert interposed a motion to dismiss because of an alleged insufficiency of the evidence, which the trial court denied, and properly so. It is to be remembered that the jury acquitted Lambert on Count 1 of the indictment. Since he was indisputably in possession of stolen securities, the jury must necessarily have determined that he did not know the securities were stolen matter. However, the jury on the evidence could well have determined that he did have guilty knowledge when he and a courier met at a motel and then went to a locker in the airport to pick up the some $400,000 in stocks which formed the basis for Count 2. As indicated, the only real issue in the case, as we see it, is whether there was evidence of guilty knowledge on the part of Fairchild and Lambert, and we deem the evidence to be amply sufficient to support the jury's verdicts.

Affirmed.