UNITED STATES of America,
Appellee,

v.

James Goff HAZELTINE, Appellant.
No. 565–70.

United States Court of Appeals,
Tenth Circuit.

June 11, 1971.

James A. Pusateri, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for appellee.

George M. Straw, Denver, Colo., for appellant.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

Hazeltine, an inmate at the federal penitentiary in Leavenworth, Kansas, was convicted on each count of a three count indictment, the first two counts of which charged him with introducing into and upon the building and grounds of a federal prison $640 in United States currency and 67 packets of heroin, without the knowledge and consent of the warden and contrary to the rules and regulations promulgated by the Attorney General, all in violation of 18 U. S.C. § 1791. Count 3 charged Hazeltine with unlawfully receiving, concealing and facilitating the transportation of a narcotic drug, namely, the aforementioned 67 packets of heroin, knowing that the drug had theretofore been imported and brought into the United States in violation of 21 U.S.C. § 174. For these several convictions Hazeltine was sentenced to an additional five years imprisonment and he now appeals.

This indictment resulted from a shakedown of Hazeltine's cell, or at least what the prosecution contended was Hazeltine's cell, in the federal prison at Leavenworth. The shakedown disclosed $640 in United States currency and 67 packets of heroin, currency and heroin both being prison contraband. As concerns the 67 packets of heroin, one packet was found in the pocket of a prison shirt hanging on the wall of the cell, which shirt bore Hazeltine's prison number, and the remaining 66 packets were found in a locked locker in the cell thus searched.

Hazeltine's defense was that neither the cell thus searched nor the locker located therein was his. Without detailing the very considerable amount of evidence introduced by the prosecution in its effort to establish that this was in fact Hazeltine's cell and locker, the prosecution offered as a part of its case certain testimonial evidence to the effect that various and sundry letters and envelopes addressed to Hazeltine were found in the locker along with the 66 packets of heroin. Specifically, two officers who conducted the search testified that they saw some 50 to 100 letters and envelopes addressed to Hazeltine in the locker. All of this correspondence was apparently returned to Hazeltine except two items and upon trial the two thus retained were offered in evidence as exhibits 5 and 6. Exhibit 5 was an envelope bearing Hazeltine's name and address as the addressee and bearing a return address to Hazeltine's wife. Exhibit 6, which was found inside exhibit 5, was a card, referred to by counsel as a "spicy" card, from Hazeltine's wife. Over objection, exhibits 5 and 6 were received into evidence on the ground that such was relevant and material to the issue as to whether the cell in question and more particularly the locker located therein were Hazeltine's.

■ The specific objection made upon trial to exhibits 5 and 6 was that each constituted hearsay, the authenticity of neither the envelope (ex. 5) nor the card contained therein (ex. 6) having been established. The trial court overruled the objection, apparently being of the view that the very fact that correspondence addressed to Hazeltine was found in the locker was germane to the issue as to whether the locker and the cell in which the locker was located were Hazeltine's. We perceive no error in this ruling.

The particular issue posed was whether this was Hazeltine's locker; hence in this setting the authenticity of the letter as concerns its purported author or the correctness of its contents were not in issue. Rather, it was the very fact that correspondence bearing Hazeltine's name and address as addressee was found in the locker in the cell assigned to Hazeltine which made such documents relevant and material to the precise issue at hand. In such circumstance documents such as exhibits 5 and 6 are admissible without authentication and are therefore not subject to objection on the ground of hearsay. *See* Wigmore on Evidence 3d ed. 1940, § 2132.

■■ In this court counsel takes a different tack and in effect concedes that exhibits 5 and 6 "may well have been relevant to the issue of Mr. Hazeltine's connection with the cell." It is now argued in this court that the *content* of exhibit 6, the so-called spicy card, was highly suggestive and prejudicial. As indicated, this particular argument was not addressed to the trial court and is raised for the first time in appellant's opening brief. Ordinarily a matter not raised in the trial court will not be considered by us on appeal. United States v. Fairchild, 435 F.2d 972 (10th Cir.). This general rule is of course subject to our overriding duty to notice plain error or defects affecting substantial rights at any time or stage of the proceedings. Fed.R.Crim.P. 52(b). Suffice it to say that we deem the particular matter now sought to be raised not to be a matter of great import affecting the substantial rights of Hazeltine. Upon trial Hazeltine was vigorously defended by not one, but two retained counsel. When exhibits 5 and 6

were received counsel were invited by the trial court to submit a "limiting" instruction if such they desired. No such limiting instruction was thereafter submitted by counsel, indicative that counsel at least did not deem the matter to be one of great import. Now appointed counsel for Hazeltine in this court would have us reverse the case because the content of exhibit 6 is said to have unfavorable sexual connotations which indeed are said to have double meanings associated with the traffic of drugs. The argument is too conjectural to permit a reversal. A review of the record reveals much evidence tending to establish that the cell thus searched was Hazeltine's, and therefore any possible error in this regard would under such circumstance be only harmless error. *See* Fed.R. Crim.P. 52(a).

While the present appeal was pending in this court, counsel for Hazeltine sought an order of this court that the arraignment proceedings, of which there were apparently two, be transcribed and made a part of his record on appeal. This request was denied by us. From Hazeltine's brief we learn that he now suggests that his constitutional right to immediate assistance of counsel was, if not denied, at least delayed by action of the trial court and by various actions of penitentiary employees who thwarted his efforts to retain counsel. In his brief Hazeltine further elaborates by claiming that such delay was prejudicial in that one of his potential witnesses died before trial and that the deposition of this person would have been taken had he been able to retain counsel more speedily than he did. Suffice it to say that a matter of this nature cannot be raised in the manner now proposed by counsel. There is nothing to indicate that this particular matter, i. e., prejudice resulting from delay in Hazeltine's retention of counsel because of conduct of the trial court or the penitentiary officials, was ever presented to the trial court. In declining to pass upon the

matter, we do so without prejudice to the right of Hazeltine to seek such post-conviction relief as may be available to him.

Judgment affirmed.