**Alexandria**

HAITHAM SHURBAJI

v.

COMMONWEALTH OF VIRGINIA

No. 1168-92-4

Decided May 24, 1994

416

Counsel

Richard McCue (Nicholas J. Chabra and Associates, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

Opinion

**FITZPATRICK, J.**—Haitham Shurbaji (appellant) was convicted by a jury of possession of cocaine with the intent to distribute. On appeal, he argues that the trial judge erred by: (1) admitting into evidence, over his hearsay objection, utility bills addressed to him; (2) admitting into evidence the contents of his safety deposit box on the basis that it constituted evidence of other crimes; (3) allowing expert testimony on an ultimate issue of fact; and (4) finding the evidence sufficient to convict. Finding no reversible error, we affirm the conviction.

## BACKGROUND

On December 11, 1990, District of Columbia and Arlington County police officers executed a search warrant at 3027 South 18th Street in Arlington, Virginia. Appellant was not present *in-*

*side* the home at the time of the search.

A search of the master bedroom revealed a bed, two night-stands, a dresser, a closet, and various articles of men's clothing. While searching the nightstands, police found three plastic bags of cocaine weighing a total of eight grams with a purity of fifty-eight to sixty-four percent, plastic baggies, a bottle of the cutting agent Inositol, appellant's United States and Syrian passports, and a wallet containing appellant's credit cards and bank cards. The top of the dresser contained glassine bags with cocaine residue, $2,100 in United States currency, and a safety deposit box key inside a First American Bank envelope. Inside the dresser were a two-gram weight scale, razor, spoon, mirror flecked with cocaine, and glassine bags with additional cocaine residue. The lining of the top drawer was covered with cocaine residue. The closet contained a man's sport coat with a prescription bottle bearing appellant's name, a paper "snow-seal,"[1] and a briefcase with three bank checks bearing appellant's name. Other personal papers including utility bills addressed to appellant were found in the master bedroom.

During the execution of the search warrant, marked Arlington County police vehicles and unmarked District of Columbia police vehicles were parked in front of the residence. The officers observed appellant approach the house in his car. As appellant began to turn into the driveway, he stopped, reversed, and drove quickly away from the house. A chase ensued for several city blocks, and appellant was arrested. A later search of the car revealed a portable cellular telephone and a telephone pager.

Police used the key found in the bedroom to enter appellant's safety deposit box at First American Bank. The box was registered exclusively to appellant, and the sign-out card showed the same signature as the three bank checks taken from the briefcase in the master bedroom closet. Cocaine residue was discovered in the safety deposit box.

At trial, appellant presented evidence that he shared an apartment with his girlfriend at a different location and that he did not live at the searched residence. However, during the month prior to

---

[1] A "snow-seal" is a piece of paper wrapped in such a manner as to hold a white powder substance and prevent the powder from falling off the sides.

the execution of the search warrant, the police maintained surveillance on the house and, on several nights, observed appellant drive into the driveway at midnight or 1:00 a.m. and remain in the residence throughout the night.

Detective Paul Cope of the Arlington County Police Department was qualified as an expert in narcotics investigation and testified about the uses of drug paraphernalia and the value of drug substances. The trial judge *sua sponte* instructed the jury on the proper use of expert testimony.

## UTILITY BILLS ADDRESSED TO THE ACCUSED

Appellant argues that the trial court erred by admitting into evidence utility bills addressed to him found in the master bedroom where the cocaine was located. Appellant contends that these documents constitute written hearsay and, because the Commonwealth was not prepared to lay a business records foundation, the documents were inadmissible. We disagree.

■ To constitute hearsay the documents must be "written evidence[ ] of a statement made out of court, the statement being offered as an assertion *to show the truth of matters asserted therein*, and thus resting for its value upon the credibility of the out-of-court asserter." *Stevenson v. Commonwealth*, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (emphasis added) (citations omitted). The challenged documents in this case were *not* offered for the truth of the matter asserted therein. The utility bills were used as circumstantial evidence that appellant received or stored his property, including his correspondence, in the master bedroom. It was irrelevant what the utility bills "asserted therein." Rather, the mere existence of the bills in the master bedroom tended to prove that appellant controlled the room, and that the cocaine and paraphernalia found there belonged to him. *See United States v. Hazeltine*, 444 F.2d 1382, 1384 (10th Cir. 1971) (envelope bearing inmate's name and address was not hearsay and properly admissible, without authentication, to establish that cell and locker in which heroin was seized were the inmate's cell and locker); *United States v. Snow*, 517 F.2d 441, 443 (9th Cir. 1975) (label bearing accused's name affixed to gun case was not hearsay and constituted an admissible evidentiary fact); *see also* McCormick on Evidence § 250 (John William Strong ed., 4th ed. 1992). Accordingly, the bills were not hearsay and were properly admitted

into evidence.

## EVIDENCE OF OTHER CRIMES

█ Next, appellant argues that the trial court erred in admitting evidence concerning cocaine residue found in his safety deposit box at a local bank. In Virginia, the general rule, subject to certain exceptions, is that where an accused is on trial "for a specific offense[,] it is usually improper to admit evidence against him of a prior independent crime." *Roy v. Commonwealth*, 191 Va. 722, 726, 62 S.E.2d 902, 903 (1951). Here, the Commonwealth presented evidence that two days after the search of appellant's residence, police officers, using the key found during the search of the master bedroom, searched appellant's safety deposit box and discovered cocaine residue.

At trial, appellant introduced evidence to support his theory that he did not own or possess the cocaine found in the master bedroom. Accordingly, evidence that the key found on the top of the master bedroom dresser, near bags containing cocaine residue and $2,100 cash, corresponded to a safety deposit box registered to and exclusively used by appellant, was clearly admissible. In addition, Commonwealth's exhibit number 9, the bank's registration card, was admissible because it proved that appellant was the only person who requested access to the box and that he had opened the box as recently as November 30, 1990, eleven days prior to the execution of the search warrant on the residence.

The error, if any, relates only to the testimony that cocaine residue was found inside the box. Assuming, without deciding, that the admission of this evidence was error because it did not fit within one of the delineated exceptions to the general rule concerning "other crimes" evidence, we find that under the facts of this case such error was harmless.

In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless "it plainly appears

from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

*Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

■ Although the trial court may have erred by admitting evidence of the contents of the safety deposit box, this does not automatically entitle appellant to a reversal of his conviction. "A conviction should not be reversed unless the introduction of improper evidence suggests a manifest probability that it was prejudicial to the defendant." *Rider v. Commonwealth*, 8 Va. App. 595, 600, 383 S.E.2d 25, 27 (1989) (citation omitted). In this case, the evidence confirming appellant's control over the master bedroom where the large cache of cocaine, paraphernalia, and money was found was so overwhelming that admission of the alleged improper evidence could not have affected the verdict.

The focus of the trial was whether the contraband found in the master bedroom was controlled by appellant and, if so, whether his possession of cocaine was with the intent to distribute. Upon review of the entire record before us, we conclude that the evidence of cocaine residue in the safety deposit box "had little, if any, tendency to prejudice the jury against [appellant] because it was so inconsequential when viewed in comparison to the overwhelming evidence of [appellant's] guilt." *Hanson v. Commonwealth*, 14 Va. App. 173, 176, 416 S.E.2d 14, 16 (1992). Considering the testimony of the surveillance conducted by the police and the extraordinary cache of contraband found in the master bedroom among appellant's important documents, personal effects, prescription bottle, utility bills, and other correspondence, it plainly appears "that the parties have had a fair trial on the merits and substantial justice has been reached." *Lavinder*, 12 Va. App at 1005, 407 S.E.2d at 911; *Mason v. Commonwealth*, 7 Va. App. 339, 348, 373 S.E.2d 603, 608 (1988). Accordingly, we find no reversible error by the admission of the challenged evidence.

## ADMISSION OF EXPERT TESTIMONY

Appellant also argues that the trial court erred in admitting the expert testimony of Detective Paul Cope concerning the use of certain items of drug paraphernalia that were found during the search of the residence. Specifically, appellant contends that "Detective Cope was permitted to express an expert opinion on the ultimate issue of whether the cocaine which was found was possessed with the intent to distribute." We disagree.

In Virginia, an expert may not render an opinion upon an ultimate issue of fact, because that would constitute an impermissible invasion of the function of the fact finder. *Llamera v. Commonwealth*, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992). At trial, over appellant's relevancy objection, Detective Cope was qualified as an expert in narcotics investigations. Before Detective Cope rendered any expert opinion, the trial judge *sua sponte* instructed the jury as follows:

An [expert is] anybody that [sic] has greater knowledge than the average person has and he's allowed to give an opinion in things that through his training and background experience or the spending of time, they have learned more about it than the rest of us would be held to know. Most issues are called jury issues and we trust the jury to decide them. We allow jurors though, sometimes to hear opinions from experts. You don't yield your verdict obligation to an expert, but you can include it in your deliberation what an expert tells you about certain facts. There's a prohibition in the Court as in any other Court in Virginia against anybody telling you what a verdict ought to be. That's called the ultimate issue and the jury does that.

On direct examination, the Commonwealth asked Detective Cope about the value and current purity levels of powdered cocaine, and about the significance of various items of drug paraphernalia, cutting agents, and packaging of cocaine. The Commonwealth then asked: "I'm showing you Commonwealth's No. 5. It's a mirror, spoon and razor blade. What is that used for?" Appellant's counsel objected and a bench conference was held. When direct examination was resumed, the following exchange transpired:

COMMONWEALTH: Detective Cope, how would — in your experience in narcotics, how would — have you seen that type of mirror used?

THE COURT: It's not individual uses or individual observations. It's his expert opinion as to the significance of different items.

COMMONWEALTH: In your opinion as an expert, what is the significance of that mirror?

WITNESS: This mirror is commonly used to take powdered cocaine and add other substances or cut it to draw take the rocks or the chunks and the powder cocaine, and you would cut it up as such to make it a fine powder. You then scrape it away like this, add powder to it to make more product, and then to package it up. That's what it's used for commonly. You can use a record album, anything that has a flat surface, but these more so than anything else are used to cut cocaine with.

The ultimate issues to be proven in this case were whether appellant possessed the cocaine and, if so, whether such possession was with the intent to distribute. Contrary to appellant's assertion, we find no evidence in the record indicating that Detective Cope testified as to an ultimate issue of fact. Detective Cope explained the significance of a type of mirror and described the process of using a mirror to "cut" or reduce the purity of cocaine. Detective Cope did not testify that appellant possessed cocaine for sale or that the combination of the amount of drugs seized and the paraphernalia "suggested" that appellant was a drug dealer. Accordingly, under the facts of this case, we find no violation of the ultimate opinion rule.

## SUFFICIENCY OF THE EVIDENCE

Finally, appellant contends that the evidence is insufficient to prove that he possessed the cocaine seized by the police, because he was not present when the search was conducted and denied residing in the searched residence.

[P]ossession of a controlled substance may be actual or constructive. "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.' "

*McGee v. Commonwealth*, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987) (citations omitted).

■■■ On appeal, the evidence must be viewed in the light most favorable to the Commonwealth and given all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The Commonwealth's evidence of appellant's constructive possession was based on circumstantial evidence. It is well settled, however, that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983), *cert. denied*, 465 U.S. 1109 (1984); *see also Johnson v. Commonwealth*, 2 Va. App. 598, 604-05, 347 S.E.2d 163, 167 (1986). Where, as here, the evidence relied upon is circumstantial, the Supreme Court has consistently held:

"[I]f the proof relied upon by the Commonwealth is wholly circumstantial . . . then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt."

*Higginbotham*, 216 Va. at 352-53, 218 S.E.2d at 537 (quoting *LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950)). Further, "[w]hile no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.' " *Stamper v. Commonwealth*, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979), *cert. denied*, 445 U.S. 972 (1980) (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

The evidence proved that appellant frequently paid the monthly mortgage on the residence and was usually present early in the morning when the builder arrived to pick up the mortgage payment. Only men's clothing was found in the master bedroom, and Ms. Shurbaji, appellant's sister, testified that appellant kept personal belongings in that room. This evidence negated appellant's claim that he did not live in the house. Further, Ms. Shurbaji admitted that appellant periodically stayed overnight in the house and slept in the master bedroom.

In plain view or in readily accessible dresser drawers and night stands, the police found a significant amount of cocaine and drug paraphernalia. Interspersed among the cocaine and paraphernalia were appellant's United States and Syrian passports, his wallet containing credit cards and bank cards, personal checks signed by appellant, and current personal papers and envelopes addressed to him at the searched residence. In a jacket located in the closet of the room the police found a prescription bottle bearing appellant's name and a "snow-seal" filled with cocaine powder. On the master bedroom dresser, adjacent to bags containing cocaine residue and $2,100 in cash, police found the key to a bank safety deposit box registered to and used exclusively by appellant. Nothing in the room indicated that anyone other than appellant had any interest in the items found.

During the month prior to the search, the police observed appellant arrive at the residence late at night and remain there until the next morning. Further, appellant arrived at the house while the police were executing the search warrant. Appellant started to drive into the driveway, then turned around and drove hurriedly away. After being chased by the police for several city blocks, he was stopped and arrested.

We agree with the Commonwealth that the evidence in this case clearly proved that appellant owned and constructively possessed the cocaine and paraphernalia seized by the police from the master bedroom of the residence, and that such possession was with the intent to distribute.

For the reasons set forth above, we affirm the conviction.

*Affirmed.*

Baker, J., concurred.

Barrow, J., dissenting.

Evidence that the key found near the cocaine in the bedroom was for the defendant's safe deposit box was admissible; however, the fact that the police found "small traces of cocaine in the box" was not. *See Wilson v. Commonwealth*, 16 Va. App. 213, 220-21, 429 S.E.2d 229, 233-34, *aff'd en banc*, 17 Va. App. 248, 436 S.E.2d 193 (1993). The admission of evidence of this fact was not, in my opinion, harmless error.

Erroneously admitted evidence is not harmless unless we can say, without invading the province of the jury, that the error did not affect the verdict. *Lavinder v. Commonwealth*, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).[2] If the other evidence of guilt is "so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict," we can conclude that an error is harmless. *Hooker v. Commonwealth*, 14 Va. App. 454, 458 n.2, 418 S.E.2d 343, 345 n.2 (1992); *see also Jenkins v. Commonwealth*, 244 Va. 445, 454, 423 S.E.2d 360, 366 (1992), *cert. denied*, 113 S. Ct. 1862 (1993); *Ferguson v. Commonwealth*, 16 Va. App. 9, 12, 427 S.E.2d 442, 444 (1993); *Hanson v. Commonwealth*, 14 Va. App. 173, 189-90, 416 S.E.2d 14, 24 (1992). In this case, however, the other evidence of guilt was not overwhelming, and the error was not insignificant.

The jury had to decide if the defendant knowingly possessed the cocaine found in the bedroom. The alleged possession was constructive, and the evidence was circumstantial. To convict the defendant, the jury had to infer from the presence in the bedroom of certain personal items identified as the defendant's that the defendant occupied the bedroom in such a manner that he would necessarily have been aware of the presence of the cocaine and asserted dominion and control over it. The jury was free to accept or reject this inference.

---

[2] The majority relies on a different principle requiring the finding of a "manifest probability that [the error] was prejudicial to the defendant." This principle applies only where the trial court has instructed the jury to disregard erroneously admitted evidence. *Boykins v. Commonwealth*, 210 Va. 309, 313, 170 S.E.2d 771, 774 (1969); *Lavinder*, 12 Va. App. at 1008, 407 S.E.2d at 913. No such instruction was given in this case. Our opinion in *Rider v. Commonwealth*, 8 Va. App. 595, 600, 383 S.E.2d 25, 27 (1989), which the majority cites in support of this rationale, also used it incorrectly.

Furthermore, the evidence that the defendant occupied the bedroom was disputed. The defendant's girlfriend and one of her friends testified that the defendant lived elsewhere. The defendant's sister, who owned the home where the cocaine was found, testified that the defendant did not live there. Although the prosecution challenged the credibility of these witnesses, their testimony was not inherently incredible, and the jury could have chosen to believe them.

Thus, the jury was free to conclude from the evidence either that the defendant possessed the cocaine or that he did not, depending on what evidence it found more credible and on what inferences it chose to make. If, however, the jury concluded that the defendant had a propensity to use or possess cocaine, as suggested by the residue of cocaine found in the defendant's safe deposit box, and, for this reason, inferred that the defendant possessed the cocaine found in the bedroom, the inadmissible evidence affected the jury's verdict. Thus, I am unable to join in the majority's conclusion that the erroneously admitted evidence was harmless. Instead, I would hold otherwise and would reverse the judgment of conviction and remand the proceeding for a new trial.[3]

---

[3] I concur with the majority that the utility bills addressed to the defendant were admissible, that the expert testimony did not address an ultimate issue of fact, and that the evidence supported the conviction.