COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Clements and McClanahan
Argued at Richmond, Virginia


KEVIN CRESWELL BLAKE

                                                MEMORANDUM OPINION* BY
v.        Record No. 1545-06-2                  JUDGE JEAN HARRISON CLEMENTS
                                                AUGUST 21, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
William H. Shaw, III, Judge

(Charles E. Haden, on brief), for appellant.  Appellant submitting
on brief.

Karen Misbach, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kevin Creswell Blake (appellant) appeals from his conviction in a bench trial of

possession of a firearm after having been previously convicted of a felony, in violation of Code

§ 18.2-308.2.  On appeal, he contends the trial court erred in finding the evidence sufficient, as a

matter of law, to support his conviction.  Finding no error, we affirm his conviction.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

I.  BACKGROUND

On an appeal challenging the sufficiency of the evidence, "'we review the evidence in the

light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

deducible therefrom.'" Blake v. Commonwealth, 15 Va. App. 706, 707, 427 S.E.2d 219, 220 (1993) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On May 15, 2005, shortly after 9:00 p.m., Duane Hardy and two other officers with the Middlesex County Sheriff's Office went to appellant's residence on 89 Blakes Cove in Middlesex County to serve an arrest warrant on appellant. Hardy, the prosecution's lone witness, testified that appellant's grandmother, Laura Colley, answered their knock. Hardy asked if appellant was "home," to which Colley responded that appellant and his girlfriend had just left and were heading for Richmond. The officers returned to their vehicle as though they were leaving, but went back to the door two minutes later because they did not believe the appellant was not in the home. Hardy knocked again, and requested permission from Colley to "look around" inside the home for appellant. Hardy testified that after giving permission, Colley led them to what she called "Kevin's bedroom," where the officers determined appellant was not present. The closet door was open, however, and several firearms were plainly visible inside. Hardy testified that Colley never mentioned appellant living elsewhere.

Hardy testified that while he was in the home, appellant called. Colley handed Hardy the telephone and said appellant wanted to speak to the officer. Appellant asked what the officers were doing there, and Hardy stated they wanted to speak to him. Appellant told Hardy he would "blow [Hardy's] g-----n ass up," and immediately hung up. Knowing that appellant was not in the home, the officers left.

It later came to the officers' attention that appellant was a convicted felon. A search warrant was issued for 89 Blakes Cove based on the firearms seen in the bedroom, and the warrant was served on May 18, 2005, in Colley's presence. The closet in the bedroom contained several loaded and unloaded firearms with ammunition and several pieces of clothing. Several pictures and plaques of appellant were hanging on the bedroom walls. The bedroom also

- 2 -

contained two pieces of opened mail; one post-marked April 5, 2005 and the other post-marked April 25, 2005, each addressed to appellant's post office box; and three forms of valid, state-issued identification belonging to appellant. A firearm was also seized from the living room of the home. Hardy testified that the firearm seized from the living room was the only firearm Colley claimed as her own and that she became visibly upset when that particular firearm was seized, but had no similar reaction to the seizure of firearms from the bedroom closet.

Testifying for the defense, Colley stated that the bedroom had been appellant's before he moved to live with his girlfriend in February, but that he no longer lived at the home on Blakes Cove in May 2005. She further testified that the firearms recovered during the search all belonged to her, having been left to her by her late husband, and that neither appellant nor anyone else ever used them. She stated that all the firearms were unloaded, that they had not been placed in the closet until April, when she had brought them from another home, and that the appellant, her grandson, never knew they were there. Colley testified that appellant came back to the home on Blakes Cove "once in a while," but he had no key. Moreover, he never went into the house farther than the kitchen and never stayed the night, since Colley had been sleeping in the bedroom from February 2005 until the day of the trial. At one point Colley testified that appellant left nothing in the bedroom; then, upon being shown a picture showing the contents of the bedroom closet, she admitted appellant had left clothing there that "he wasn't wearing." Colley claimed she had never retrieved appellant's mail from his post office box and that she had no means to do so. She also testified that she had called appellant during the search on May 15, 2005 to let him know police were "there looking for him with some papers" and that she had let appellant talk to Hardy.

Colley's testimony differed from Hardy's in several respects. She denied telling Hardy on May 15, 2005 that appellant had just left with his girlfriend. Instead, she testified to having

stated that appellant no longer lived at the home.  She also testified that she did not lead Hardy to the bedroom or call it "Kevin's room," instead maintaining that Hardy walked to the bedroom "on his own."  Finally, she testified that on May 18, 2005 she told the officers who seized the firearms that they all belonged to her.

Katherine Richwine, appellant's girlfriend, testified that appellant had lived with her in a house "ten, fifteen minutes" from the home on Blakes Cove and that he had lived there since February 2005.  She said he had moved from the Blakes Cove home with "most of his clothes and a few other things," but that he still had a key in May 2005.  Richwine could not say that he never stayed overnight at his former residence, but testified that as far as she knew appellant had spent every night from February 2005 to May 2005 in her house.  Appellant, Richwine said, received some mail at her home and some at his post office box.

At the end of closing arguments, the trial court ruled as follows:

> I can accept most if not all of the testimony of Ms. Richwine.  It's not a question of where [appellant] was actually living.  It's whether or not he had such an interest in that property that he exercised dominion and control over that room and the things in it along with . . . his grandmother.  Ms. Colley said he didn't have a key.  Ms. Richwine said that he did.  Ms. Richwine said as far as she knew she recalls he stayed at the house, the house they lived in.  I'll accept that. . . .  This isn't an all or nothing about where exactly he was living.  It's [about] whether he maintained such an interest in Ms. Colley's house that he would have exercised dominion and control over the room with the contents including the guns[,] which, as I said, can be along with her control.

> \* \* \* \* \* \* \*

> And even though I can accept just about all of [appellant's girlfriend's] testimony, I do not accept Ms. Colley's testimony and,

therefore, I find the evidence sufficient of such control, that he constructively possessed these firearms.

The trial court found appellant guilty of the charged offense, and this appeal followed.

## II. ANALYSIS

"'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Id. at 707-08, 427 S.E.2d at 220 (quoting Martin, 4 Va. App. at 443, 358 S.E.2d at 418)). "'"[W]e presume the judgment of the trial court to be correct,"'" Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002))), and will not overturn a verdict on appeal "unless no '"rational trier of fact"' could have come to the conclusion [the trial court] did," Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

As we examine the evidence that was considered by the trial court, we are mindful that "[t]he credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters solely within the province of the fact finder." Carter v. Commonwealth, 38 Va. App. 116, 119, 562 S.E.2d 331, 332 (2002); see Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993) ("[D]etermining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [finder of fact]."). Accordingly, "'we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom,'" Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)), unless the testimony was "'inherently incredible, or so contrary to

human experience as to render it unworthy of belief,'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).  In its role as the finder of fact, the trial court has "the right to reject that part of the evidence believed . . . to be untrue and to accept that found . . . to be true."  Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).

The trial court judge stated that he accepted Hardy's testimony, and also the testimony of appellant's girlfriend as not necessarily inconsistent therewith.  He explicitly did not believe most of Colley's testimony, excepting her statements that 1) she could not and did not retrieve appellant's mail; 2) the firearms were unloaded when they were put into the bedroom closet; and 3) she had not loaded them.  Appellant having presented no reason for us to find Hardy's testimony inherently incredible or contrary in any respect to human experience, the finder of fact was within its discretion to credit that testimony while accepting Colley's only insofar as it determined her testimony was not incredible.  The trial court's factual findings guide our consideration of whether the evidence credited and relied upon were sufficient as a matter of law to support appellant's conviction.

"'A conviction for knowingly and intentionally possessing a firearm after having been convicted of a felony [under Code § 18.2-308.2] requires proof beyond a reasonable doubt of either actual or constructive possession of the firearm.'"  Gregory v. Commonwealth, 28 Va. App. 393, 397, 504 S.E.2d 886, 888 (1998) (quoting Hancock v. Commonwealth, 21 Va. App. 466, 468, 465 S.E.2d 138, 140 (1995)); see Blake, 15 Va. App. at 708-09, 427 S.E.2d at 220-21 (holding that principles applicable to constructive possession of drugs also apply to constructive possession of firearm).

> "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and

- 6 -

character of the [item] and that it was subject to his dominion and control.'"

Gregory, 28 Va. App. at 397-98, 504 S.E.2d at 888 (quoting Hancock, 21 Va. App. at 469, 465 S.E.2d at 140 (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984))) (alterations in original). "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Kelly, 41 Va. App. at 259, 584 S.E.2d at 448 (quoting Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991))).

Occupancy of the premises where controlled items are discovered, while raising no presumption on the issue of possession, is a factor that may be considered in determining whether an accused constructively possessed the items. Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998) (citations omitted). An accused can occupy an area even while simultaneously maintaining actual residence elsewhere. See Shurbaji v. Commonwealth, 18 Va. App. 415, 444 S.E.2d 549 (1994) (holding that despite the established fact that an accused maintained an actual residence elsewhere with his girlfriend, the evidence demonstrated a connection to a bedroom in his sister's home that "negated [his] claim that he did not live [there]"). In resolving the issue of occupancy, "the court must consider 'the totality of the circumstances disclosed by the evidence.'" Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (quoting Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979)).

Here substantial evidence supported the prosecution's theory that appellant was at least a part-time occupant of the area where the firearms were seized. On May 15, 2005, when the officers went to 89 Blakes Cove to arrest appellant at his residence and asked whether appellant was "home," Colley did not tell them that appellant lived elsewhere. Instead, she stated he had

just left with his girlfriend. Later that evening when she consented to the officers' search for appellant, Colley led Hardy to what she called "Kevin's room." While the officers searched the bedroom, Colley notified appellant by telephone, and he reacted angrily. The bedroom contained appellant's personal belongings; including his current official identifications and clothing. His pictures and plaques were hanging on the wall in a manner consistent with occupancy. See Woodfin v. Commonwealth, 218 Va. 458, 461, 237 S.E.2d 777, 779 (1977) (recognizing the probative value of diplomas and plaques "displayed in the manner a resident would customarily display them," on the issue of whether the accused was an occupant of the house where contraband was discovered). And, despite Colley's inability to open appellant's post office box, the bedroom contained his recent mail. In total, the trial court could rely on this evidence to conclude that appellant was an occupant of the bedroom where firearms were discovered.

Appellant nevertheless contends that the evidence is insufficient to support his conviction because it fails to exclude the reasonable hypothesis that the firearms belonged to and were in the possession of Colley, his grandmother. "Proof of constructive possession necessarily rests on circumstantial evidence; thus, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence,'" Burchette v. Commonwealth, 15 Va. App. 432, 434, 425 S.E.2d 81, 83 (1992) (quoting Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983)), though "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant," Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). However, the extant possibility that Colley owned and possessed the firearms herself does not, by itself, represent a theory of innocence, since "'possession "need not always be exclusive. The defendant may share it with one or more."'" Blake, 15 Va. App. at 708, 427 S.E.2d at 221 (quoting Josephs v.

Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc) (quoting Gillis v. Commonwealth, 215 Va. 298, 301-02, 208 S.E.2d 768, 771 (1974))); see Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983) (rejecting, in the context of drug possession charge, an argument by the accused that "when one person is in actual possession[], another may not have simultaneous constructive possession"). We therefore reject appellant's argument that, as a matter of law, his conviction required the evidence to be inconsistent with the theory that the firearms were in Colley's possession.

We likewise reject appellant's contention that despite his personal connection to the bedroom, the evidence does not support a finding that he constructively possessed the firearms. See Lowe v. Commonwealth, 36 Va. App. 163, 168, 548 S.E.2d 904, 906 (2001) ("[E]vidence of ownership or occupancy of the premises, alone, is insufficient to prove constructive possession." (citing Nicholas v. Commonwealth, 186 Va. 315, 322, 42 S.E.2d 306, 310 (1947)). In addition to the substantial evidence that appellant was an occupant of the home at 89 Blakes Cove, Colley did not claim the firearms in the bedroom closet as her own or otherwise react to their seizure, even as she became visibly upset at the seizure of a firearm from the living room. This evidence allows a rational finder of fact to infer that the firearms in the closet belonged, instead, to appellant. Even more compellingly, the trial court having accepted Colley's testimony that the firearms had been unloaded when deposited in the closet, it could infer that appellant—the only other person shown by the evidence to have access to the area—was the one who loaded them. Compare Rawls v. Commonwealth, 272 Va. 334, 350, 634 S.E.2d 697, 705 (2006) (recognizing that where an accused occupies a bedroom in his mother's house, and where access thereto is apparently limited to a few family members, items of contraband found therein are more easily linked to the room's occupant), with Woodfin, 218 Va. at 461, 237 S.E.2d at 779 (recognizing that because evidence demonstrated that the accused did not have exclusive access to the area in

question, certain personal items were insufficient to connect him to a bedroom he sometimes used in his sister's home where contraband was discovered).  Finally, appellant's clothing was discovered inside the open closet with the firearms, allowing a rational finder of fact to infer that appellant was aware of the presence and character of the firearms occupying the same immediate space.

We conclude that, in considering the totality of the circumstances disclosed by this evidence, a rational finder of fact could reasonably infer that appellant continued to occupy the bedroom through May 18, 2005, that he was aware of the firearms in the bedroom closet, and that the firearms were subject to his dominion and control.  Thus, we hold the trial court's judgment was neither plainly wrong nor without supporting evidence.  Accordingly, we affirm appellant's conviction.

<u>Affirmed.</u>