UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 0555-18-1              JUDGE ROBERT J. HUMPHREYS
                                            AUGUST 21, 2018

LORENZO EUGENE GHOLSON

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Artisha Todd Gregg (Rice, Paige, Pandya & Gregg, on brief), for
appellee.

The Commonwealth of Virginia ("the Commonwealth") appeals the March 28, 2018

order of the Circuit Court of the City of Newport News ("circuit court") granting Lorenzo

Eugene Gholson's ("Gholson") motion to suppress statements made, and evidence seized, on

October 30, 2015.  The Commonwealth argues that the circuit court erred in suppressing the

evidence because there was sufficient probable cause to arrest Gholson for possession with intent

to distribute drugs seized from the residence at 1606 Ivy Avenue in the City of Newport News.

I.  BACKGROUND

On October 30, 2015, the City of Newport News Police Department executed a valid

search warrant on 1606 Ivy Avenue in the city of Newport News.  Gholson's brother, Robert,

had sold marijuana to an informant at this address within the preceding forty-eight hours.  Prior

to executing the warrant, police performed surveillance of the location for approximately thirty

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to forty-five minutes. During this time, police observed an individual matching Gholson's description enter and leave the house several times. When police exited the vehicle to serve the warrant and began walking towards the house, Gholson was across the street. Upon seeing police, Gholson began moving rapidly towards the house. Police intercepted and detained Gholson outside the house, and once the property was secure, brought Gholson inside. Police located cocaine, heroin, and marijuana inside the residence. Police also found two letters addressed to Gholson, one from a health care provider, which was undated, and one from a law firm, dated in June, 2015. Police asked Gholson about a moped inside the house, which he indicated was "ours." Gholson also asked a detective who was standing on a pair of shoes to "step off my shoes." When subsequently asked whether the shoes were his, Gholson replied that he didn't know whose they were. Significantly, the record before us is largely silent with respect to where in the home the drugs, marijuana, mail, shoes or moped were located.

Police arrested Gholson for possession with intent to distribute marijuana, cocaine, and heroin in violation of Code § 18.2-248 and § 18.2-248.1 based on his constructive possession of all the narcotics in the house. In a search incident to arrest, they found a sizable amount of currency on his person. Gholson and Robert were then placed in the back of a police car which was equipped with recording equipment. In speaking to Robert, Gholson made incriminating statements indicating he was aware of drugs in the house.

At the suppression hearing, police testified that they had a history of encountering Gholson at the house, having served previous search warrants on the house in 2011 and 2012, finding Gholson present on both occasions. Police also testified that Gholson's car was frequently seen parked outside the house in 2014 and 2015. Cynthia Banks, whose daughter has an eight-month-old child with Gholson, testified that Gholson has been living with her since 2014. The circuit court found that Gholson's detention while the search was ongoing was

proper, but that police lacked probable cause to arrest Gholson, and granted his motion to suppress the money recovered from his person and his statements made in the police vehicle. The circuit court explained that Gholson could have moved out of the house and that the mail, moped, and shoes did not indicate he lived at the residence, noting the absence of items crucial in similar cases, such as a birth certificate or government identification.

## II. ANALYSIS

### A. Standard of Review

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992) (citing Code § 8.01-680; Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.

Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (internal citations omitted).

### B. Whether There Was Sufficient Probable Cause to Arrest Gholson

"[P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed" by the person arrested. Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836

(1981). "In determining whether a police officer had probable cause to arrest a defendant, a trial court must consider the totality of the facts and circumstances presented and what those facts and circumstances reasonably meant to a trained police officer." Jones v. Commonwealth, 279 Va. 52, 59, 688 S.E.2d 269, 273 (2010).

The Commonwealth argues that the circuit court erred by limiting its probable cause analysis to the question of Gholson's residency. They argue that the totality of the circumstances includes additional factors which establish constructive possession. First, that on October 30, 2015, police observed a man matching Gholson's description enter and exit the residence several times in the forty-five-minute span before the warrant was executed. Second, that Gholson ran towards the house when police exited their vehicles, which, the Commonwealth argues, shows that Gholson was attempting to conceal something within the house. Third, that Gholson's statements regarding the shoes and moped constituted him "assert[ing] a possessory interest in at least two items in the house" and that it would therefore be reasonable to infer that Gholson possessed other items in the house. Finally, the Commonwealth points to Gholson's relationship with the other occupants of the house, his mother and his brother, as a factor for consideration.

At oral argument, the Commonwealth characterized the probable cause standard as "a low bar." While probable cause is certainly a lesser standard than the burden of proof required for a conviction, it nevertheless requires "a reasonable ground for belief" that a suspect is involved in criminal activity (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). In this case, the key question is whether the evidence in the light most favorable to Gholson, as the party who prevailed in the circuit court, established probable cause that Gholson exercised dominion and control over the controlled substances found in his mother's home.

Of course, possession need not be exclusive, and may be constructive rather than physical. See Ritter v. Commonwealth, 210 Va. 732, 741, 173 S.E.2d 799, 805-06 (1970). To

establish constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and *that it was subject to his dominion and control*." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984) (citing Susan Eckhart v. Commonwealth, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981)) (emphasis added). "Although mere proximity to drugs is insufficient to establish possession, it is a circumstance which may be probative in determining whether an accused possessed such drugs." Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (citing Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 882 (1992) (*en banc*)).

Gholson's proximity to the home where the search was to be conducted, standing alone, is insufficient to establish that he exercised dominion and control over the contents of the home. In Drew v. Commonwealth, 230 Va. 471, 338 S.E.2d 844 (1986), Drew, like Gholson, was in the street near the dwelling when the warrant was executed. Drew was convicted of possession of cocaine with intent to distribute. Id. at 472, 338 S.E.2d at 844. Our Supreme Court reversed, finding this proximity to the dwelling insufficient where the Commonwealth had presented "no evidence of statements or conduct which tend to show that Drew was aware of the presence of cocaine in the dwelling." Id. at 473, 338 S.E.2d at 845. Of important note, our Supreme Court granted that the evidence showed Drew resided at the house, but that even his residency plus his proximity was insufficient to prove constructive possession. Id. at 474, 338 S.E.2d at 846.

Even in combination with his presence near the home, without more than appears in the record before us, the additional fact that items attributable to Gholson were in the residence is still insufficient to establish constructive possession of the drugs in this case. In Garland v. Commonwealth, 225 Va. 182, 300 S.E.2d 783 (1983), our Supreme Court reversed a constructive possession conviction based on the presence of clothing of Garland's size (including

shoes), an expired driver's license, and, most notably, a lease for the residence, current at the time of arrest, naming Garland as co-lessee. Id. at 183, 300 S.E.2d at 784. Our Supreme Court found that "[t]he most that could be reasonably inferred from the lease was that Garland had occupied the premises at some time." Id. at 184, 300 S.E.2d at 785. However, in Shurbaji v. Commonwealth, 18 Va. App. 415, 444 S.E.2d 549 (1994), we upheld a constructive possession conviction where narcotics, clothing, utility bills, the defendant's passport and wallet were all found in close proximity in the master bedroom of the residence, which the defendant's sister testified the defendant often stayed in. See also Birdsong v. Commonwealth, 37 Va. App. 603, 609, 560 S.E.2d 468, 471 (2002) (relying upon evidence showing that appellant alone used the room where drugs were found). The deciding factors in such cases, are an evaluation of whether in *combination*, the location and proximity of the personal items to the location of the drugs establishes a reasonable inference that a suspect has exercised dominion and control over them.

In the present case, the record fails to reflect a number of facts that would suggest a reasonable belief that Gholson exercised dominion and control over any drugs present in his mother's home at the time of his arrest such as whether that Gholson was present in the home during the drug transaction that served as the basis for the search warrant; whether other drug transactions occurred during the surveillance period during which Gholson made frequent trips in and out of the home; or where in the home Gholson's personal items were located in proximity to where the drugs were found. Indeed, in the light most favorable to Gholson, we are bound by the fact that he did not live in the home at the time of the search and had not done so since 2014. Although a reasonable inference can be drawn that he was a frequent visitor and even that it was a reasonable suspicion that Gholson was likely aware that drugs were present in the home, such inference or suspicion is not sufficient to establish that Gholson constructively possessed the entirety of the contents of his mother's home including any controlled substances on the

premises. As the appellant in this case, it is the Commonwealth's responsibility to provide us with a record sufficient to overcome the presumption of regularity and permit us to discern error on the part of the circuit court. The dearth of specifics provided by the Commonwealth in this record of the suppression hearing prevents us, as it apparently prevented the circuit court, from determining any linkage beyond a presumption of guilt by familial association between Gholson and the narcotics found in his mother's home.

At the beginning of the suppression hearing in this case, Gholson's counsel asserted that the parties have stipulated to "what the facts are that will make things a little bit shorter so that [the circuit court] can decide what would be suppressed or not suppressed based on where things are found." The prosecutor did not challenge or dispute the representation and presented no evidence regarding details of where the items the Commonwealth relies on to establish that Gholson exercised dominion and control over the drugs—except that they were all found within the home where Gholson visited, and which contained items attributable to him. The only mention of the location of the narcotics came during testimony, when the Commonwealth asked a police detective whether the audio statements made by Gholson after his arrest indicate that he knew drugs were on the kitchen table. While any inference from this post-arrest statement comes too late to establish probable cause for his arrest, we note that the presence of drugs in a common area, such as a kitchen, does not indicate that Gholson exercised dominion and control over them. If the drugs were found atop Gholson's mail on the kitchen table, the Commonwealth's argument that the probable cause standard is met would be more meritorious, but the record before us provides no basis for distinguishing Drew and Garland.

Neither do the additional factors the Commonwealth lists on brief change the calculus. Gholson's claimed ownership of the shoes and the moped, suffer from the same locus infirmities in the record as Gholson's mail and the articles found in Garland. Inferring dominion and

control over all the property in the house from the articles the Commonwealth relies on here without more context than this record provides would contradict both case law and common sense. The Commonwealth characterizes Gholson running towards the house as suspicious conduct, apparently under the theory that it shows Gholson was aware of what was occurring in the house and rushed to warn the occupants. Aside from the obvious fact that awareness of the presence of drugs does not equate to an exercise of dominion and control, a consequence of the Commonwealth's argument is that Gholson must have been rushing to create the (legally insufficient) proximity to drugs he allegedly knew were present inside the residence. Finally, the Commonwealth turns to Gholson's familial relationship with his mother and brother as evidence supporting probable cause. No published authority is cited by the Commonwealth in support of its implied proposition that probable cause flows from visiting the sins of the mother and the brother on the son, and we decline to recognize a concept of "probable cause by association" as sufficient for an arrest.

### III. CONCLUSION

While there is suspicion aplenty suggesting that Gholson was aware of the criminal activities of his mother and brother, the record before us is devoid of sufficient evidence to establish probable cause that Gholson ever possessed the drugs found in the home of his mother and brother, therefore we cannot say that the circuit court's decision to suppress the evidence was plainly wrong, and the judgment of that court is therefore affirmed.

Affirmed.