THE STATE OF OHIO, APPELLEE, *v.* SAUNDERS, APPELLANT.

(No. 83AP-963—Decided December 27, 1984.)

*Michael Miller,* prosecuting attorney, and *Joyce S. Anderson,* for appellee.

*James Kura,* county public defender, and *Gloria Eyerly,* for appellant.

STRAUSBAUGH, J. This is an appeal by defendant, Robert L. Saunders, from a conviction in the Court of Common Pleas of Franklin County for the offense of aggravated robbery in violation of R.C. 2911.01. Defendant brings the following two assignments of error:

"1. The trial court erred in overruling appellant's motion to dismiss for lack of a speedy trial.

"2. The trial court erred to appellant's prejudice in allowing evidence to be admitted against appellant which violated the rules against hearsay and inference on inference and which violated appellant's right to confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 10, of the Constitution of the State of Ohio."

With respect to the first assignment of error, defendant was originally indicted on October 27, 1982 for a violation of R.C. 2911.01. The trial was originally set for January 11, 1983; however, defendant requested a continuance, whereupon, the trial was rescheduled for March 15, 1983. At the conclusion of the trial, the trial court declared a mistrial because the jurors were unable to reach an agreement. A new trial was set for April 12, 1983; however, the trial was continued until

June 15, 1983 in accordance with an entry signed by defendant's attorney who waived defendant's right to a speedy trial. Thereafter, the trial was continued two additional times to July 13, 1983 and, thereafter, to September 12, 1983. On August 19, 1983, the defendant filed a *pro se* motion to dismiss the indictment, asserting the violation of his right to a speedy trial under R.C. 2945.71. On September 2, 1983, defendant's attorney filed a similar motion. Defendant argues that although all the continuances herein were consented to by defense counsel, at some point the constitutional right to a speedy trial must take precedence. Defendant claims that the delay in this case was too long and that his speedy trial rights were violated.

The record indicates that sixty-seven days elapsed between defendant's arrest and January 11, 1983 when defendant requested a continuance and waived the time until March 15, 1983. Each day in the interim counts only as one day inasmuch as defendant was serving a prison sentence on an unrelated charge. The Supreme Court in *State* v. *MacDonald* (1976), 48 Ohio St. 2d 66, held in the first paragraph of the syllabus that R.C. 2945.71(D), now (E), is applicable only to those defendants held in jail in lieu of bail solely on the pending charge. With respect to the retrial, the Supreme Court in *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, 21, stated:

"The trial court correctly held that R.C. 2945.71 is not applicable to retrials. It is noteworthy that the statute does not include any reference whatever to retrials. The standard to be applied, therefore, is basically reasonableness under federal and state constitutions. * * *"

The record indicates that defendant, through his counsel, agreed to continue the case to June 15, 1983 and thereby waived his right to a speedy trial. Defendant is bound by his counsel's action. See *State* v. *McBreen* (1978), 54 Ohio St. 2d 315 [8 O.O.3d 302]. The continuance of the case from June 15, 1983 until July 13, 1983 was for unrevealed reasons; however, on July 14, 1983 defendant's counsel signed an entry continuing the case until September 12, 1983, waiving defendant's right to a speedy trial. There is no indication in the record that defendant suffered any prejudice by the continuances, which were agreed to by his defense counsel. A review of the transcript of proceedings indicates no undue lapses of memory by witnesses either for the defense or the prosecution. Defendant's first assignment of error is overruled.

With respect to the second assignment of error, the record indicates that Barbara Conley Cordell, manager of the Clean Machine, Fabric Care Center, 1130 East Main Street, testified that at 7:30 a.m., on September 22, 1982, she opened the laundromat; that a dark-complexioned black man whom she described as six-feet one or two, in his twenties, and whom she had seen previously in the laundromat, came in and proceeded to wash clothes; that his hair was a cropped "Afro"; that he had rather small, sleepy-type eyes; that he kept staring at her to the extent that she went out on the floor and asked if he was having a problem with his washing machine and did he need her help, to which he responded that he did not and that everything was fine; that the man whom she identified as the defendant was with a woman who came in and out of the laundry several times and spoke to the defendant; that at about 9 a.m., Tom Eghen, the owner of the laundromat, came in to collect money from the machines as was his weekly custom; that Eghen put the money, which she estimated as between six or seven hundred dollars in coins, in two bank bags and left the bags in the back room, while he checked her accounting and read the

electric and water meters; and that Eghen also observed the defendant looking at her and commented that he thought the guy had a crush on her and that the defendant made him nervous staring at her. Later, Cordell testified that she was confronted at gun point by the defendant, who had the bank bags; that he ordered her to lie down on the floor and not try to touch the alarm or he would blow her brains out; and that she refused to get on the floor saying that she would be just as dead standing up as on the floor and that she was not going to get on the floor, whereupon the defendant said, "The hell with it," and walked out. She stated that she then called the police, and, upon their arrival, gave them a jacket, which the defendant had left in a dryer, and a cleaning ticket bearing the name of a man from Dayton who frequently came in and looked like the defendant. Later, the police showed Cordell two photographic arrays, one in color and one in black and white. She identified defendant's photograph in the array whigh was in color and identified Robert Slone's photograph in the black and white array as the man from Dayton whose cleaning ticket she had pulled.

Lynn Hines testified that she was the assistant manager of the Key DeVille Motel on East Main Street and identified a registration card dated September 22, 1982, as being signed by a guest, Robert L. Saunders. The parties stipulated that the signature thereon was defendant's. She further testified that on the evening of September 22, 1982, as she was coming to work she observed a black couple going upstairs with a laundry basket to room fifteen, registered to Saunders; and that later, the woman with Saunders came into her office and had a conversation which was objected to as being inadmissible hearsay and an inference on an inference. The trial court admitted the statement based upon the case of State v. Lewis (1970), 22 Ohio St.

2d 125 [51 O.O.2d 209]. The trial court inquired whether there was some instruction that should be given the jury, stating that he did not want to emphasize any problems. Defense counsel stated that she did not see anything to tell the jury. The question objected to was:

"Q. THE REPORTER: 'When she came into the office, what occurred then?'

"* * *

"A. She asked if I could use some spare change and I asked if it was wrapped. She said, 'No.'

"I didn't want to wrap it. I said, 'No.'

"Q. All right. At that point did she then leave?

"A. As far as I can remember she did."

Thereafter, defense counsel conducted the following cross-examination of the witness:

"Q. * * * Miss Hines, did the police officers at any time contact you concerning who stayed in that room?

"A. Yeah. The police talked to me but I don't believe I talked to anyone on the 22nd.

"Q. Did the police contact you concerning who stayed in that room?

"* * *

"A. Yes.

"Q. * * * [D]id they tell you they were investigating a robbery?

"A. No. Not at first he didn't.

"* * *

"A. * * * [H]e asked me if I had — if the name Bob Saunders rang a — or Robert Saunders rang a bell.

"I said, 'Yeah. He had stayed here a couple of times' which he had. He was never a problem but he had stayed there.

"He asked me when was the last time I had seen him in there. I said, 'It was not too long ago.'

"I pulled the folios and registration cards, * * * [and] I showed them to him.

" 'What is going on,' I said? You know, he didn't say anything at first. I said —

"THE COURT: Well, this is what is going to create a problem here now.

"MISS SCHNIEDER [defense counsel]: It is not creating any problems for me.

"THE COURT: Proceed.

"MISS HOLTHOUSE [assistant prosecutor]: Object to what Detective Millay is relating. I'm not sure where this is going.

"Q. (By MISS SCHNIEDER) Did he tell you he was investigating a robbery at any time?

"A. In that conversation?

"Yes.

"* * *

"Q. Did he tell you it was a robbery of a laundromat?

"A. Huh-uh.

"Q. After you had this conversation with Detective Millay about the fact that he was investigating a robbery, is that when you remembered the laundry basket in her hands?

"A. The manager and I talked about that. The manager, to begin with —

"Q. You recongized, you remembered the one laundry basket on September the 22nd?

"* * *

"THE WITNESS: Normally people that check in just were overnight or for awhile or whatever don't have like a laundry basket of clothes and things. Okay.

"When I was going in the office the manager said he saw some stuff being carried up.

"I said, 'Well, they are carrying a laundry basket now.'

"When people do take more than a small amount into a room, when we see that we just assume they are going to stay two or three days.

"They did not — that was the conversation I had with the manager. That is the only reason the laundry basket was even brought in with the manager.

"Q. (By MISS SCHNIEDER) How many people do you usually have in and out of that motel?

"* * *

"A. In a week?

"* * *

"A. Usually around 140.

"Q. When they check in, does anyone else ever — to me that is such an odd thing to remember.

"Do you remember what color luggage the man in [room No.] 17 had?

"A. He didn't have any.

"Q. Did you ever actually see any change?

"A. No.

"Q. When the lady came in?

"A. No.

"Q. Did you ever find out how much you were talking about?

"A. No."

The defense contends that the statement by the unidentified companion of defendant who asked witness Hines if she could use spare change is hearsay in that it was offered to prove the truth of the matter asserted and that the declarant was not subject to cross-examination. The state contends that the question asked by defendant's companion, since it was in the form of a question, is not an assertion, but that if the words are an assertion, they are not offered for whatever they assert and are therefore non-hearsay. The state also argues that utterances which are not assertions on their face should be treated as verbal conduct equivalent to the common-law doctrine of a verbal act; however, assuming that the instant case involves verbal conduct, the state argues that the conduct was nonassertive and therefore not hearsay. In support, the state relies, as did the trial court, on *State* v. *Lewis, supra*. An examination of *Lewis* indicates that that case is not applicable to the issue before us inasmuch as the statement (the contents

of a telephone conversation) in *Lewis* was not admitted for the truth of what was said but, rather, for the purpose of showing that the call had been made. In the present case, the mere fact that the declarant's statement was in the form of a question does not necessarily render it nonassertive. In the context of Evid. R. 801(A), "to assert" means simply to say that something is so. Here, because the effect of declarant's communication was that she was saying that she had access to some spare change if the witness could use it, she was making an assertion within the contemplation of the rule against hearsay. In this case, the state's only purpose in offering the statement was to prove the truth of the matter asserted — that the defendant's companion had unwrapped loose change in such quantity that she wished to exchange it for paper currency. In *Lewis,* the telephone conversation was not offered for the truth of its content but to show that a conversation took place, namely, that the person calling was not the purported deceased victim, but, rather, it was the defendant who had killed the victim and was making the telephone call. The Supreme Court, therefore, held that such telephone call was not hearsay.

However, even if the statement herein be hearsay, it was admissible under one of the exceptions to the rule against hearsay. Evid. R. 804(B)(3) states:

"Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

In this case, the statement by declarant tended to subject her to criminal liability as a participant in the robbery, or for receiving stolen property. The question of just how much corroboration is required by the rule, under circumstances where the statement was offered to inculpate the accused, appears to be one of first impression in this state. The federal counterpart, Fed. R. Evid. 804(b)(3), requires corroboration only in instances where the statement is offered to exculpate the accused. When viewed in that context, the addition by the United States House of Representatives of the language "* * * circumstances clearly indicat[ing] the trustworthiness of the statement * * *" to the United States Supreme Court's draft calling only for simple corroboration, in an effort to ensure a standard of trustworthiness which would exceed mere corroboration of the declarant's exculpatory statement by the accused himself, is understandable. See 11 Moore's Federal Practice (2 Ed. 1982), Section 804.01 [12—1 and —2].

Because our Supreme Court was aware of this federal drafting backgound when it adopted the Ohio rule (see Staff Note to Evid. R. 804[B][3], which requires corroboration for inculpatory statements as well), we must assume that a bare showing of some extent of corroboration is not enough. Instead, the rule contemplates a demonstration of corroborating circumstances (concerning the content of the statement and the conditions under which it was made) which, on balance, persuade the trial judge that the statement bears the clear indicia of reliability and trustworthiness, leaving the ultimate determination of credibility to the jury.

Applying this standard, we conclude that the record includes corroborating

circumstances which clearly indicate the trustworthiness of the statement. For example, there was nothing about the circumstances under which the statement was made that would lead one to be skeptical about its reliability. And, there was corroboration of the content of the statement. Cordell testified that defendant was visited by and conversed with a female companion on several occasions during that time he was in the laundromat prior to the robbery, and that a large portion of the loot was in coins. Defense counsel stipulated that defendant had signed a registration card and been a guest at the motel where Hines said she saw defendant with the female companion who later made the statement. Furthermore, it is apparent from the record that the witness was unavailable.

Defendant also contends that the evidence also violated the rule that an inference of fact cannot be predicated on another inference. However, an inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury. It is permissible for a jury to draw several conclusions or presumptions of fact from the same set of facts and equally permissible for a jury to use a series of facts or circumstances as a basis for ultimate findings or inferences. *Hurt* v. *Charles J. Rogers Transportation Co.* (1955), 164 Ohio St. 329 [58 O.O. 122]. Here the state presented the following direct evidence: a man identified as the defendant robbed the laundromat; much of the booty was in coins; a police officer saw a man believed to be the defendant carrying a bag and running away from and about two blocks from the laundromat; the defendant checked into the motel where Hines worked and she saw the defendant with the woman who asked about the change. Here, the inference in combination with the above direct evidence may be indulged in by the trier of the fact. See *State* v. *Ebright* (1983), 11 Ohio App. 3d 97.

For the foregoing reasons, we are unable to conclude that the trial court erred in admitting such statement, in view of Evid. R. 804(B)(3). Defendant's second assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

MOYER and NORRIS, JJ., concur.