831 A.2d 532

**Michael Joseph BERNADYN**

v.

**STATE of Maryland.**

**No. 1266, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Sept. 5, 2003.

Carrie S. Leonetti, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before KENNEY, BARBERA and GREENE, JJ.

GREENE, J.

Appellant, Michael Joseph Bernadyn, was convicted by a jury in the Circuit Court for Harford County of possession of marijuana, possession of marijuana with intent to distribute, and maintaining a common nuisance. The two drug possession charges were merged and appellant was sentenced to a

term of imprisonment of five years for possession of marijuana with intent to distribute and a consecutive one-year term for maintaining a common nuisance.

Appellant noted this appeal to raise the following questions for our review:

I. Did the circuit court err in admitting into evidence the medical bill addressed to appellant?

II. Did the circuit court err in permitting Deputy Burkhardt to offer opinion testimony?

III. Did the circuit court err in refusing to pose two of appellant's requested *voir dire* questions?

IV. Did the circuit court err in denying appellant's motion for judgment of acquittal?

Finding no error and that there was sufficient evidence to convict appellant, we affirm the judgments.

### FACTS

In August 2001, Deputy Mark Burkhardt of the Harford County Sheriff's Office conducted evening and late night surveillance on 2022 and 2024 Morgan Street in Edgewood, Maryland. Deputy Burkhardt observed the residences for approximately one week. Deputy Burkhardt testified at trial to witnessing numerous individuals entering and exiting the two buildings. Individuals would often exit and walk to adjoining streets to conduct hand-to-hand drug transactions. Deputy Burkhardt further noted that individuals would often return to one of the residences after a transaction had taken place.

Deputy Burkhardt testified that he frequently witnessed appellant leaving 2024 Morgan Street and walking up and down the street. Appellant was also observed looking up and down the street prior to letting people into the residence. Deputy Burkhardt stated that he observed this behavior on approximately ten to fifteen different occasions. Deputy Burkhardt also noted that individuals entering 2024 Morgan Street included known drug dealers. These individuals were

viewed answering the door at 2024 Morgan Street and conducting transactions in the area.

On one occasion, two females were viewed exiting 2024 Morgan Street and exchanging what appeared to be a marijuana joint. The females departed and returned to the residence a short time later.

Based on the preceding information, Deputy Burkhardt applied for and was granted a search and seizure warrant for 2024 Morgan Street.

On August 29, 2001, Deputy Burkhardt, Detective Brayband, and Sergeant Galbraith of the Harford County Narcotics Task Force executed the search and seizure warrant at 2024 Morgan Street. Appellant was found alone in the living room of the residence. The police seized five one-ounce bags and twenty small baggies [1] containing marijuana, a coffee can holding marijuana seeds and stems from the master bedroom, a small tin holding marijuana from a desk in the living room, and a marijuana pipe from a curio cabinet in the living room. Deputy Burkhardt testified that the master bedroom contained men's clothing. Notably, the second bedroom only contained women's clothing and objects that would belong to an individual in high school or middle school. The police also seized a medical bill from Johns Hopkins Bayview Physicians addressed to Bernadyn at 2024 Morgan Street. The "Statement Date" listed on the bill was August 16, 2001.

Appellant was charged with possession of marijuana, possession of marijuana with intent to distribute, and maintaining a common nuisance. A two-day jury trial was held on April 15–16, 2002. During the course of trial the State offered, over appellant's objection, the medical bill indicating appellant's address as 2024 Morgan Street. Appellant contended that he did not reside at the subject residence and was not aware of the marijuana or paraphernalia. As a means of bolstering appellant's position, appellant's counsel asked Deputy Burk-

---

1. The small baggies were referred to as "dime bags." The divisions are referred to as such because they generally contain $10 of marijuana.

hardt whether he investigated the name on the lease to 2024 Morgan Street. Deputy Burkhardt noted that he had made such an inquiry and discovered that an individual named Nicole Majerowicz was the lessee. On redirect, the following pertinent exchange occurred:

STATE: Deputy, how many search and seizure warrants have you assisted with in your career?

DEFENSE: Objection. Relevance.

COURT: Overruled.

DEPUTY BURKHARDT: Over 50.

STATE: And when you've conducted those search and seizure warrants, how common is it for the utilities to be in someone else's name?

DEFENSE: Objection.

COURT: If you know. Overruled.

DEPUTY BURKHARDT: Very common.

STATE: How common is it for the apartment to be in someone else's name?

DEFENSE: Objection.

COURT: Overruled.

DEPUTY BURKHARDT: Very common.

At the conclusion of trial, the jury found appellant guilty of all charges. Appellant subsequently noted the current appeal.

We shall include more facts in the discussion as necessary.

## DISCUSSION

### I. The Medical Bill

Appellant contends that the circuit court erred in admitting the medical bill into evidence. He argues that the bill constituted hearsay and that the State did not establish that the bill was produced in the ordinary course of business. We do not agree.

Maryland Rule 5–801 provides the following pertinent definitions:

(a) Statement. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) Declarant. A "declarant" is a person who makes a statement.

(c) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

■ Rule 5–802 provides that hearsay is generally inadmissible. *See Stanley v. State,* 118 Md.App. 45, 53, 701 A.2d 1174 (1997), *vacated in part on other grounds,* 351 Md. 733, 720 A.2d 323 (1998)(stating "[h]earsay is considered to be generally unreliable because the opponent does not have the opportunity to cross-examine the declarant"). Although "the admission of evidence is committed to the considerable and sound discretion of the trial court," we shall reverse a trial court "if the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion." *Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432 (1997); *see Conyers v. State,* 354 Md. 132, 176, 729 A.2d 910 (1999)(noting the trial court's determination regarding the admission of evidence "may not be disturbed on appeal unless there has been an abuse of that discretion"); *Hopkins v. State,* 352 Md. 146, 158, 721 A.2d 231 (1998)(stating "we extend to the trial court great deference in determining the admissibility of evidence and will reverse only if the court abused its discretion").

The case *sub judice* raises the question of whether a bill, mailed to an individual at a particular address can be considered hearsay. This is an issue of first impression for the State of Maryland. We shall begin by discussing Rule 5–801.

Rule 5–801(a)(1) defines a statement as an oral or written assertion. Quite certainly, a bill addressed to an individual at a specific address does not assert anything more than that the individual owes the sender money for services. The bill simply did not state "Michael J. Bernadyn lives at 2024

Morgan Street." The subject bill, and indeed most correspondence, only includes a name and address. We reject any contention that such information contains an implied assertion[2] that the individual resides at the listed residence. The

---

**2.** We have most recently discussed the topic of implied assertions in *Carlton v. State*, 111 Md.App. 436, 681 A.2d 1181 (1996). We noted:

The text of Rule 5–801 is substantively the same as Federal Rule 801(a)-(c). Under the federal rule, courts have taken divergent positions as to when, if ever, an implied assertion is an assertion within the meaning of Rule 801(a)(1). LYNN MCLAIN, MARYLAND RULES OF EVIDENCE 214–217 (1994 ed.). There are three basic approaches under federal decisions: 1) That "no implied assertions from statements are hearsay" (*id.* at 214, 681 A.2d 1181); 2) that "implied assertions from verbal statements are hearsay" (*id.* at 215, 681 A.2d 1181); and 3) that implied assertions are hearsay unless "there is no possibility that the declarant intended to leave a particular impression" (*id.*, *quoting Park v. Huff*, 493 F.2d 923, 927 (5th Cir.1974), *withdrawn on other grounds*, 506 F.2d 849 (en banc), *cert. denied*, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975)). The committee note to Maryland Rule 5–801 states that the fact that evidence "is in the form of a question or something other than a narrative statement ... does not necessarily preclude its being an assertion." Based on the committee note, it would appear that the drafters of Maryland Rule 5–801 rejected the view that implied assertions are never hearsay. At common law, Maryland recognized implied assertions as hearsay. *See Waters v. Waters*, 35 Md. 531, 544–45 (1872); *Eiland v. State*, 92 Md.App. 56, 81–82, 607 A.2d 42 (1992); *rev'd on other grounds, sub nom. Tyler v. State*, 330 Md. 261, 623 A.2d 648 (1993); *Eades v. State*, 75 Md.App. 411, 426–27, 541 A.2d 1001, *cert. denied*, 313 Md. 611, 547 A.2d 188 (1988).

*Id.* at 442–43, 681 A.2d 1181.

In holding that the hearsay rule was not violated, we provided examples of questions that include implied assertions. We stated:

Many questions asked by an out-of-court declarant can be implied assertions. For example, the question, "Do you need change?" impliedly asserts that the questioner has change. *State v. Saunders*, 23 Ohio App.3d 69, 491 N.E.2d 313 (1984). The question, "Why did you stab me, Brutus?" impliedly asserts that the questioner was stabbed by Brutus. On the other hand, many, if not most, questions make no assertion; the questioner simply seeks answers. *Burgess v. State*, 89 Md.App. 522, 537–38, 598 A.2d 830 (1991). The questions Ussel asked Ms. Shipley fall into this latter category. When Ussel asked, "Does Mr. Zinkhan have an alarm?" or "What time, if ever, will Mr. Zinkhan leave?" he made no explicit or implied assertion. Ussel's questions could not possibly have been "offered in evidence to prove the truth of the matter asserted." Therefore, the hearsay rule was not violated when Ms. Shipley was allowed to repeat the questions Ussel asked her.

conduct of addressing a letter is a non assertive action. *United States v. Singer*, 687 F.2d 1135, 1147 (8th Cir.1982), rev'd on other grounds *en banc*, 710 F.2d 431 (8th Cir.1983).

Of import, several jurisdictions have directly dealt with the issue before us. The United States Court of Appeals for the Eighth Circuit addressed the issue in *United States v. Singer*, *supra*. In *Singer*, the appellees were convicted of conspiracy to distribute marijuana and attempted distribution of marijuana. *Id.* at 1138. Subsequent to the arrest of an individual attempting to mail large quantities of marijuana, police found documents linking Joseph Sazenski to the drug ring. *Id.* at 1139. The police consequently obtained a search warrant for Sazenski's residence at 600 Wilshire, Minnetonka, Minnesota. *Id.* During the resulting search, police seized a gram scale, marijuana, an eviction notice addressed to "Carlos Almaden and Joseph Sazenski, 600 Wilshire Drive, Minnetonka, Minnesota," several other documents, and substantial amounts of money. *Id.* at 1139–40. On appeal, appellees contended that the envelope addressed to Almaden and Sazenski was hearsay. *Singer*, 687 F.2d at 1147. In rejecting this contention the Court stated:

> Fed.R.Evid. 801(c) states: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Advisory Committee for the proposed Rules of Evidence noted that "the effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion.... [Some] nonverbal conduct ... may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred." This observation is consistent with the purpose of the hearsay rule—the exclusion of declarations whose veracity cannot be tested by cross-examination. There is some guarantee that an infer-

---

*Id.* at 443, 681 A.2d 1181.

ence drawn from out-of-court behavior is trustworthy, because people base their actions on the correctness of their belief. 4 Weinstein, *Evidence* § 801—53–56 (1981). If this letter were submitted to *assert* the implied truth of its *written contents*—that Carlos Almaden lived at 600 Wilshire—it would be hearsay and inadmissible. It is, however, admissible nonhearsay because its purpose is to imply from the landlord's *behavior*—his mailing a letter to "Carlos Almaden," 600 Wilshire—that "Almaden" lived there. In addition, it is important that the letter was found in the residence at 600 Wilshire.

*Id.* at 1147.

Thus, the Court concluded that a letter seized from a residence during a lawful search was not hearsay when offered to show that the sender believed appellees resided at the subject address and the letter was found in the residence to which it was addressed. It is clear, however, that the content of the letter could not be used to prove the truth of the matters asserted in the letter.

The Court of Appeals of Virginia reached a similar result in *Shurbaji v. Virginia,* 18 Va.App. 415, 444 S.E.2d 549 (1994). In *Shurbaji,* a search of a residence revealed eight grams of cocaine, various articles of drug paraphernalia, substantial amounts of money, personal items bearing appellant's name, and personal papers, including utility bills, addressed to appellant. *Id.* at 550. Notably, the items were all found in the same master bedroom. *Id.* On appeal, appellant contended that the trial court erred in admitting the utility bills into evidence because it was hearsay and the prosecution was unable to lay a foundation under the business records exception. *Id.* at 551. In concluding that the trial court did not err, the Court held:

The challenged documents in this case were not offered for the truth of the matter asserted therein. The utility bills were used as circumstantial evidence that appellant received or stored his property, including his correspondence, in the master bedroom. It was irrelevant what the utility bills

"asserted therein." Rather, the mere existence of the bills in the master bedroom tended to prove that appellant controlled the room, and that the cocaine and paraphernalia found there belonged to him. *See United States v. Hazeltine*, 444 F.2d 1382, 1384 (10th Cir.1971) (envelope bearing inmate's name and address was not hearsay and properly admissible, without authentication, to establish that cell and locker in which heroin was seized were the inmate's cell and locker); *United States v. Snow*, 517 F.2d 441, 443 (9th Cir.1975) (label bearing accused's name affixed to gun case was not hearsay and constituted an admissible evidentiary fact); *see also* McCormick on Evidence § 250 (John William Strong ed., 4th ed.1992). Accordingly, the bills were not hearsay and were properly admitted into evidence.

*Id.*

The Court of Appeals of North Carolina addressed the same issue in *North Carolina v. Peek*, 89 N.C.App. 123, 365 S.E.2d 320 (1988). In rejecting the contention that mail addressed to appellant was hearsay, the Court stated:

On its face, a written or printed name and address on an envelope asserts nothing. From the sender's conduct in writing or affixing the name and address and mailing the material so addressed, however, it may be inferred that the sender believes the person named lives at that address. As the Commentary to Rule 801 makes clear, conduct "offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved" is not a statement. Although evidence of the sender's conduct remains untested as to perception, memory, and narration, those "dangers are minimal in the absence of an intent to assert, and do not justify the loss of the evidence on hearsay grounds." G.S. 8C-1, Rule 801, Commentary. *See also* McCormick on Evidence, section 250 (3d ed.1984). The sender's conduct in addressing and mailing the envelope undoubtedly implies that the sender believes the addressee lives at that address. Nevertheless, because no

assertion is intended, the evidence is not hearsay and is admissible.

*Id.* at 322.

Indeed, other jurisdictions have reached the same conclusion regarding the admissibility of mail seized during a search. *Illinois v. Cruz,* 111 Ill.App.3d 95, 66 Ill.Dec. 843, 443 N.E.2d 769, 774 (1982)(noting "[i]t could be argued that the bill was not hearsay evidence if it were simply offered as circumstantial evidence that [appellee] was receiving mail at that address, from which it might be inferred that he resided there as well"); *Missouri v. McCurry,* 582 S.W.2d 733, 734 (Mo.Ct.App.1979)(holding that a telephone bill found in the same room as contraband "was not offered to show the truth of the matters asserted on the face of the bill," but to show a connection between appellee and the contraband).

■ We are persuaded by the logic of these decisions. Consequently, we hold that mail offered to prove that the individual to whom the correspondence is addressed has some connection to the residence, and *not* the truth of the matter asserted in the body of the correspondence, is admissible nonhearsay.

In the case at bar the following excerpt from the State's closing argument is insightful:

Then you go to the officer who testifies, "When we go in, we look for mail." And I submit if you said to anyone, "Go in this certain house," and tell them no other information, "and tell me who lives there," odds are they are going to pick up a piece of mail and look at it, and they're going to say, probably that person lives here because their mail is here. And then again that is something you would rely on in your every day decision making in that type of situation. And what you have, the officers said, there's other mail, but, you know, they don't back a truck up to the house when they are doing a Search and Seizure Warrant and unload the entire contents of the house.

They pick a piece of evidence that shows who lives there, and what you have is a bill from Johns Hopkins Bayview

Physicians, a statement date of August 16, 2001. That's almost two weeks before the warrant, but it's for services that are provided back in June of 2001.

Now we go back almost two months prior to the warrant being served. So I guess defense counsel and the defendant would have you believe that Johns Hopkins randomly picked an address of 2024 and just happened to send it there, and that's where the defendant lived. It doesn't happen, because you also—look, this is a bill, is what it is, and I am sure that any institution is going to make sure they have the right address when they want to get paid.

The preceding provides the only indication regarding the purpose for which the State introduced the subject bill. The State suggests that the police seized an article of mail as evidence that someone lives at an address. The intent of the police in seizing the bill is not at issue. The State thereafter noted that Johns Hopkins believed that appellant resided at the address. The State further bolstered the statement by suggesting that Hopkins' belief was most likely correct, because it is an institution that wished to be paid and would do background checks. Consequently, the State properly offered the bill as evidence that Johns Hopkins believed appellant lived at the address. Appellant did not object to the State's comments.

Appellant relies on *U.S. v. Patrick*, 959 F.2d 991 (D.C.Cir. 1992), to contend that the bill was improperly admitted into evidence. *Patrick* is distinguishable from the case at bar. In *Patrick*, appellant was convicted of possession with intent to distribute cocaine and the use of a firearm in relation to drug trafficking. *Id.* at 993. During a search, pursuant to a warrant, of a one bedroom apartment where appellant was residing, police seized a large amount of cocaine, money, a handgun, and a sales receipt for a television set. *Id.* at 994. The receipt indicated appellant purchased a new TV and listed the residence as his address. *Id.* Appellant objected to the admission of the sales receipt at trial, contending that the document was hearsay. *Id.* at 999. The Court stated:

During closing argument, the prosecutor explained:

Take, for example, an argument that might be made that that's not his apartment, that he doesn't live there, and that's not his bedroom, that he doesn't stay in that bedroom.

Well, ladies and gentlemen, let's look at a couple of things that were taken out of that bedroom. Look at government's exhibit no. 14, the television receipt. You all had a chance to look at this closely before[,] when it was admitted into evidence. G.A. Patrick, 818 Chesapeake Street, Southeast, Washington, D.C. 20020.

The receipt so used constituted a statement, namely Patrick lived at 818 Chesapeake Street, Southeast, and that statement indisputably was hearsay. Unlike the use of the name on the receipt to show that an item belonging to Patrick was found in the bedroom, the prosecutor published Patrick's address as it appeared on the receipt to prove the truth of the matter asserted, that is, the address of Patrick's residence.

*Patrick*, 959 F.2d at 1000 (internal citations omitted).

The Court explained further that the receipt was double hearsay because it embodied the assertion of both the Circuit City employee who made out the receipt and the customer who provided the address. In the absence of testimony that Circuit City's standard practice was to record and verify an address provided by a customer, the Court concluded that the receipt did not fall under the business record exception. *Id.* at 1000–1001.

The Court in *Patrick* determined that "the government used the receipt to prove that Patrick resided at the address." *Id* at 1000 n. 13. We agree that such a use would be inadmissable hearsay. In the case *sub judice*, however, the bill was used as a means to show that Johns Hopkins believed appellant lived at the address and that the belief was likely accurate because Johns Hopkins had an interest in being paid. Such an offering is admissible nonhearsay.

Moreover, alternatively, it was immaterial to the State's case whether or not appellant owed Johns Hopkins money for

services rendered. The medical bill was not offered to establish the truth of its contents, but rather for its probative value as circumstantial evidence connecting appellant to the residence wherein he, the bill, and the drugs were all found. Hence, there was no need to inquire into the credibility of the declarant at the time the medical bill was prepared.

Similarly, the eviction notice addressed to the defendants in *Singer,* the personal papers and utility bills addressed to the defendant in *Shurbaji,* the mail addressed to the defendant in *Peek,* and the evidence offered here was not intended as an assertion and the jury was free to infer from the sender's conduct (writing the name and address and mailing the material so addressed) that the addressee lived at the address in question. This inference was bolstered further by the fact that appellant was found inside the residence at that address.

## II. Deputy Burkhardt's Testimony

Appellant next contends that the court erred in allowing Deputy Burkhardt to testify regarding his experiences involving background investigations because the testimony was not helpful to the jury and lacked sufficient factual support. Specifically, appellant contends that Deputy Burkhardt is not an expert in leasing and utility practices and, thus, his opinion testimony should not have been admitted. Again, we do not agree.

We reaffirm that trial courts have considerable discretion regarding the admission of evidence, and we shall only reverse the court if there is a clear showing of an abuse of discretion. *Merzbacher,* 346 Md. at 404, 697 A.2d 432; *See Conyers,* 354 Md. at 176, 729 A.2d 910; *Hopkins,* 352 Md. at 158, 721 A.2d 231.

Maryland Rule 5–701, limits the opinion testimony that may be accepted from a lay witness. The Rule provides:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear

understanding of the witness's testimony or the determination of a fact in issue.

The Court of Appeals has further explained the requirements of Rule 5–701 in *Robinson v. State*, 348 Md. 104, 702 A.2d 741 (1997). In *Robinson*, appellant was convicted by a jury of possession of cocaine. *Id.* at 107, 702 A.2d 741. Following his arrest, appellant ingested a substance that the police alleged to be cocaine. *Id.* at 108, 702 A.2d 741. On appeal, appellant contended that the trial court erred in allowing two officers to give lay opinion testimony regarding the swallowed substance. *Id.* In reversing the conviction for possession of a controlled dangerous substance, the Court established a four-pronged test. The Court stated:

> A trial court should, within the sound exercise of its discretion, admit lay opinion testimony if such testimony is [1] derived from first-hand knowledge; [2] is rationally connected to the underlying facts; [3] is helpful to the trier of fact; [4] and is not barred by any other rule of evidence.

*Id.* at 118, 702 A.2d 741.

Thereafter, the Court described two categories of admissible lay opinion testimony. The first category is "lay opinion testimony where it is impossible, difficult, or inefficient to verbalize or communicate the underlying data observed by the witness." *Robinson*, 348 Md. at 119, 702 A.2d 741. The second category encompasses situations where the jury would be unable to draw the proper inferences from the underlying data due to a lack of knowledge or skill. *Id.* at 120, 702 A.2d 741. The Court then noted that Maryland courts have recognized a narrow exception for police officers. Notably, the "specialized training, experience, and professional acumen of law enforcement officials" often justifies a court's admittance of testimony outside the scope of the officer's underlying factual observations. *Id.* at 120, 702 A.2d 741.

In applying the requirements of the four-pronged test, the Court concluded that the officers could not visually identify the subject substance as cocaine. Although

the record demonstrate[d] that the trial court would have been justified in concluding that [the officers] had the training and experience to offer opinion testimony as to the visual appearance of crack cocaine, ... neither trooper limited his testimony to identifying the visual characteristics of the disputed substance. Rather, both [officers] testified to the chemical nature of the alleged contraband.

*Id.* at 122, 702 A.2d 741.

Thus, the Court concluded that the testimony fell outside the scope of the officers' personal knowledge. Similarly, the Court concluded that the visual identification is not rationally connected to the chemical nature of crack cocaine because many substances share the same physical characteristics. *Id.* at 125, 702 A.2d 741. Finally, the Court concluded that the testimony was not helpful to the jury because the conclusions were based upon mere assumptions. *Robinson,* 348 Md. at 128, 702 A.2d 741. Thus, the Court concluded that the testimonies of both officers should not have been admitted.

We have reaffirmed the test set forth in *Robinson* in various decisions. In *Bey v. State,* 140 Md.App. 607, 781 A.2d 952 (2001), *cert. denied,* 368 Md. 526, 796 A.2d 695 (2002), we held that the circuit court did not abuse its discretion in excluding a detectives's "lay opinion regarding whether appellant may have been under the influence of PCP at the time he was arrested." *Id.* at 625, 781 A.2d 952. Despite the detective's testimony that he had contact with many people under the influence of PCP, the testimony revealed that such individuals "could exhibit a wide range of behavior and emotion," the detective only had contact with appellant for a short period of time, and the detective noted nothing unusual about appellant's conduct during this period of time. *Id.*

In *Bell v. State,* 114 Md.App. 480, 691 A.2d 233 (1997), we concluded that lay opinion testimony regarding the mental state of an assailant was erroneously admitted. Appellant was convicted of manslaughter, attempted first degree murder, and use of a handgun in the commission of both of the preceding crimes. *Id.* at 483, 691 A.2d 233. At trial, appel-

lant claimed that he had shot his two victims in self-defense. *Id.* at 487, 691 A.2d 233. During trial, two independent witnesses testified that there was no appearance of an imminent threat to appellant. *Id.* at 506–07, 691 A.2d 233. On appeal appellant claimed, in part, that the circuit court erred in admitting the subject testimony. *Id.* at 505–06, 691 A.2d 233. We initially noted that, although the questions were not couched in the form of opinion testimony, the answers required the witnesses to opine as to the appellant's state of mind. *Bell,* 114 Md.App. at 507, 691 A.2d 233. We further acknowledged that, despite the rule that "opinion generally is 'not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact,'" the testimony in the instant matter should not have been admitted. *Id.* at 508, 691 A.2d 233 (quoting Rule 5–704(a)). Specifically we noted that the witnesses lacked any first-hand knowledge regarding appellant's state of mind and the testimony was not helpful to determining a fact in issue to the jury. *Id.* at 509, 691 A.2d 233.

In *Rosenberg v. State,* 129 Md.App. 221, 741 A.2d 533 (1999), *cert. denied* 358 Md. 382, 749 A.2d 173 (2000), we used the test set forth in *Robinson* to conclude that the admission of a detective's lay opinion testimony was not an abuse of discretion. *Rosenberg* involved the arrest of appellant for the alleged theft of tools. Initially, police officers observed him tampering with a telephone equipment box. *Id.* at 231, 741 A.2d 533. The officers believed that appellant was using special tools to make free phone calls due to the state of several wires that appeared to be crimped and pulled from the box. *Id.* at 233–34, 741 A.2d 533. The police did not immediately arrest appellant but seized a canvas bag of tools under the belief that the tools had been stolen. *Id.* Thereafter, officers obtained a search warrant for appellant's vehicle and residence. *Rosenberg,* 129 Md.App. at 234–35, 741 A.2d 533. The resulting search uncovered over a hundred items of telephone equipment that were not generally available to the public. *Id.* at 236, 741 A.2d 533. Appellant was thereafter

convicted by a jury of "two counts of theft of property valued at more than $300." *Id.* at 229, 741 A.2d 533.

On appeal appellant, in part, contended that the circuit court erred in allowing a detective to give lay opinion testimony regarding:

> (1) the significance of crimp marks on the telephone wires in the telephone box; (2) what appellant was doing with the wires in the telephone box; (3) whether certain equipment seized from appellant's canvas bag and home belonged to Bell Atlantic; and (4) whether the blue material found on the barbed wire at a Bell Atlantic storage facility was consistent with the blue blanket found in appellant's truck.

*Id.* at 254, 741 A.2d 533.

We held that the detective's testimony fell within the category of permissible testimony under *Robinson*. We first noted that the detective had twenty-five years of experience as a police officer, experience conducting electronic surveillance, and experience dealing with phone boxes. *Id.* at 256, 741 A.2d 533. We then concluded:

> According to [the detective], the crimp marks on the wires in the telephone box were consistent with the type of marks made by "alligator clips connected to a butt-in set." This remark was derived from the detective's first-hand knowledge, was rationally connected to the underlying facts, and was helpful to the trier of fact, because it would have been difficult, if not impossible, to convey the type of marks on the wires. [The detective] also testified that, based on what he had observed at the scene, he believed that appellant was using the wires hanging outside the box in an attempt either to make telephone calls or to monitor telephone lines. This remark was also based on the detective's first hand knowledge of the scene ..., it was rationally connected to the underlying facts, and was helpful to the jurors because it may have been difficult for them to understand that a person could steal telephone service or make calls by opening a telephone box and attaching a number of alligator clips to certain wires.

Further, [the detective] testified that during a search of appellant's home he found a white canvas bag that was identical to the white canvas bag that appellant had with him when the police first saw him. [The detective] testified that the bag was similar to those used by the telephone company. This testimony was also derived from first-hand knowledge; was rationally connected to the underlying facts; and was helpful to the jury because there were no marks on the bags identifying them as bags used by tele- ·phone repair persons.

Lastly, appellant complains about [the detective's] opinion testimony that the blanket recovered from appellant's home was similar to the blue fuzzy material found on the fence at one of Bell Atlantic's facilities. Again, this testimony was based on the detective's first hand knowledge, was rationally connected to the underlying facts, and was helpful to the jury. As the material on the fence was not entered into evidence, there was no other way to communicate the similarities which Detective Angelino physically observed.

*Rosenberg,* 129 Md.App. at 256–57, 741 A.2d 533. *See also Smith v. State,* 116 Md.App. 43, 66, 695 A.2d 575 (1997)(noting a lay witness's testimony that she "perceived the victim was dead" was not expert testimony regarding the cause of death).

■ In the case at bar, Deputy Burkhardt testified regarding his experiences seeking search warrants and the frequency with which he found leases or bills to be in the name of an individual who was not the targeted resident.[3] The Deputy's

---

3. Deputy Burkhart was the seizing officer who executed the search and seizure warrant for 2024 Morgan Street. He related to the court his training and experience in the area of drug investigations. He testified that as a member of the Harford County Narcotics Task Force, he conducted investigations of narcotics complaints in an undercover capacity. According to Deputy Burkhardt, he had been doing this work for approximately one-and-a-half years and conducted more than a hundred drug investigations. He also testified that he had attended "a basic narcotics investigators' course, the Maryland State Police Top Gun Narcotics Investigators' course," and he had "received additional training in the identification of CDS and packaging and distribution from the Northeast Counterdrug Training Center, and other drug iden-

testimony was limited to the investigations he made pursuant to search and seizure warrants and, thus, was derived from first-hand knowledge.[4] The testimony is connected to the underlying facts of the case because appellant had noted that the lease for the residence was not in his name as a means to bolster his position that he did not live at the house. The testimony was helpful to the trier of fact because it suggested that, in Deputy Burkhardt's experience, the presence of another name and the absence of appellant's name on the lease, did not eliminate the possibility that appellant lived at the residence. Indeed, the Deputy noted that, in his personal experience, he frequently discovered that leases were in the names of other individuals. Finally, appellant has not alleged that the testimony was barred by any other rule of evidence.

Appellant relies on *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976), to suggest that Deputy Burkhardt should not have been able to testify regarding his experiences involving other cases. In *Dorsey,* a detective was asked to give a percentage of the arrests he made that resulted in a conviction. *Id.* at 641, 350 A.2d 665. The detective noted that the percentage was between seventy-five to eighty percent. *Id.* at 642, 350 A.2d 665. The Court of Appeals found the admission of the testimony to be erroneous because the statements were irrelevant to the current case and prejudicial. *Id.* at 643, 350 A.2d 665. The Court stated:

> The principal issue in the appellant's trial was whether he was one of the perpetrators of the robbery. [The detec-

---

tification courses." Additionally, Deputy Burkhardt offered testimony that he had assisted in the execution of more than fifty search and seizure warrants. Moreover, based upon his training and experience, he was familiar with the specific leasing practices of suspects in drug investigations where search warrants were executed.

4. On cross-examination of Deputy Burkhart, defense counsel established that the name on the lease for 2024 Morgan Street and on the BGE bill was Nicole Majerowiicz. On redirect examination of Deputy Burkhart, the State established that in over 50 search and seizure warrants in which Deputy Burkhart had assisted, it was "very common" for the utilities and apartment to be listed in "someone else's name."

tive's] testimony, attempting to establish that a large percentage of those arrested by him for robbery were ultimately proven guilty, undertook to collaterally establish the detective's investigative successes, but had no probative value in tending to establish the proposition in issue—the identity of the appellant as one of the robbers—and was thus patently irrelevant.

\* \* \*

Permitting the detective to relate syllogistically—though imperfectly—before the jury, the high probability of the appellant's guilt, tended to portray the officer as a "super-investigator" and thus clothed his testimony, with a greater weight than that which might have been given to the testimony of the other witnesses. Thus, the jury's basic function of weighing the conflicting evidence in arriving at a conclusion of guilt "beyond a reasonable doubt," was subjected to the counterbalancing effect of the detective's irrelevant and extraneous opinion. Indeed in the absence of any showing of similarity between the investigation which led to the appellant's arrest and those other investigations which led to the detective's conviction rate, the premise posited before the jury appears to have been invalid.

*Id.* at 644–45, 350 A.2d 665.

In the case *sub judice,* Deputy Burkhardt's testimony was relevant to an issue raised by appellant and did not have the same prejudicial effects as the testimony is *Dorsey.* Of note, the State questioned the Deputy regarding his previous investigations because appellant emphasized that the apartment was not leased in his name. Thus, the testimony was a means to clarify that, in the Deputy's experiences, people often live at residences in which the lease or utility bills are in another's name. The testimony was, indeed, relevant.

Furthermore, Deputy Burkhardt's testimony was not so prejudicial that it outweighed its probative value. Unlike the case in *Dorsey,* the statement did not tend to portray the Deputy as an infallible "super-investigator" that always arrested the guilty party. The testimony merely suggested that any

reliance on the lease to suggest that appellant did not reside in the house may have been misplaced.

Appellant also relies on our opinion in *Goren v. United States Fire Ins. Co.*, 113 Md.App. 674, 688 A.2d 941 (1997), for the proposition that testimony regarding leasing and utility practices should be left to experts. In *Goren*, a State Trooper testified regarding his observations and conclusions based on his investigation of the scene of an automobile accident. The Trooper was not an expert in accident scene reconstruction, and he did not witness the accident. *Id.* at 680, 688 A.2d 941. Moreover, the parties had employed two experts in accident reconstruction to testify at trial. *Id.* at 679–80, 688 A.2d 941. Consequently, we stated:

> This testimony certainly exceeded a recitation of facts that Robbins [the State Trooper] observed at the scene.
>
> Moreover, Robbins's testimony did not satisfy the requirements of Rule 5–701. First, it is clear that the Trooper's opinions were not based upon events that he witnessed; he acknowledged that he was not present at the time of the accident. Second, Robbins's opinions were not helpful to the jury, within the meaning of the rule, because they were the type of opinions that required an expertise in accident reconstruction, which Robbins admittedly did not possess.

*Id.* at 687, 688 A.2d 941.

The case at bar is readily distinguishable from *Goren*. Deputy Burkhardt testified only as to his investigatory experiences. The Deputy's statements were, thus, appropriately limited to the requirements of Rule 5–701. The testimony was helpful to the jury because it suggested that the lack of appellant's name on the lease did not necessarily imply that he did not live in the house. This testimony was further helpful because the Deputy opined that in his experience as an officer making many investigations, a suspect's name would *often* not be on the lease. An expert was not necessary to suggest this possibility. Furthermore, Deputy Burkhardt's experience as a law enforcement officer gave additional insight that the average jury, arguably, would not possess.

Accordingly, we hold that the circuit court did not err in allowing the testimony to be admitted. Moreover, had an error occurred, we are convinced that the error would be harmless. An error is harmless if an appellate court determines beyond a reasonable doubt that the error did not influence the verdict and prejudice the defendant. *See Brown v. State,* 364 Md. 37, 44, 770 A.2d 679 (2001); *Johnson v. State,* 325 Md. 511, 522, 601 A.2d 1093 (1992). In the instant case, appellant was found in the residence, the jury was presented with testimony that appellant had been seen consistently entering and exiting the residence, and, as noted above, a medical bill listing appellant's name and address was seized from the residence. Consequently, we find that the jury had ample facts from which it could infer that appellant lived at the subject address. We conclude that Deputy Burkhardt's testimony regarding leases did not affect the verdict.

### III. *Voir Dire*

Appellant contends that the circuit court erred in failing to ask two proposed questions of the venire. We do not agree.

Prior to *voir dire,* the following exchange occurred:

DEFENSE: Couple of questions on the voir dire. Problems with the voir dire before we even ask it.

\* \* \*

STATE: I object to defense counsel's number 20.

COURT: Which is?

STATE: "Is there any member of the panel who feels that a person's mere presence at a scene where drugs are found makes them guilty, even though the law may instruct otherwise?"

COURT: I agree. Anything else, folks?

DEFENSE: Nope.

The following then occurred before the bench during *voir dire:*

COURT: Exceptions to the *voir dire* as given?

\* \* \*

DEFENSE: Number 12, which I think is another way to establish bias when a police officer testifies, and possibly the Defendant.

COURT: With him not testifying?

DEFENSE: If he elects to testify, would you assume he is not telling the truth.[5] It's just another bias question as far as police versus non police officers.

COURT: I'm not going to ask that one.

DEFENSE: Thank you.

Notably, the circuit court did question the venire about whether any member would "be more or less likely to believe a police officer as opposed to a civilian witness solely because he or she is a police officer." The court furthermore asked standard questions regarding the skepticism of defense witnesses and strong biases against drugs.

The Court of Appeals in *Dingle v. State*, 361 Md. 1, 759 A.2d 819 (2000), recognized the purpose of *voir dire*. The Court stated:

*Voir dire*, the process by which prospective jurors are examined to determine whether cause for disqualification exists, *see Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33 (1996), is the mechanism whereby the right to a fair and impartial jury, guaranteed by Art. 21 of the Maryland Declaration of Rights, *see Grogg v. State*, 231 Md. 530, 532, 191 A.2d 435 (1963), is given substance. *See Hill v. State*, 339 Md. 275, 280, 661 A.2d 1164 (1995); *Bedford v. State*, 317 Md. 659, 670, 566 A.2d 111 (1989). The overarching purpose of *voir dire* in a criminal case is to ensure a fair and impartial jury. *See Boyd v. State*, 341 Md. 431, 435, 671 A.2d 33 (1996); *Hill v. State*, 339 Md. 275, 279, 661 A.2d 1164 (1995); *Davis v. State*, 333 Md. 27, 34, 633 A.2d 867 (1993); *Bedford v. State*, 317 Md. 659, 670, 566 A.2d 111

5. According to appellant's brief, the proposed question read:
"If the Defendant elects to testify on his own behalf, would any of you assume that he is testifying falsely because he is the person on trial? Would any of you be unable to weigh his testimony in the same manner as any other witness?"

(1989); *Casey v. Roman Catholic Archbishop*, 217 Md. 595, 605, 143 A.2d 627 (1958); *Adams v. State*, 200 Md. 133, 140, 88 A.2d 556 (1952). In *Davis*, 333 Md. at 33, 633 A.2d 867, quoting *Langley v. State*, 281 Md. 337, 340, 378 A.2d 1338 (1977) (citing *Waters v. State*, 51 Md. 430, 436 (1879)), we said, "a fundamental tenet underlying the practice of trial by jury is that each juror, as far as possible, be impartial and unbiased."

*Id.* at 9, 759 A.2d 819 (internal footnote omitted).

The Court further noted:

Undergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: "to ascertain 'the existence of cause for disqualification.' "

In so doing, the questions should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered.

*Id.* at 10, 759 A.2d 819 (quoting *Hill v. State*, 339 Md. 275, 279, 661 A.2d 1164 (1995)); *see also State v. Thomas*, 369 Md. 202, 207, 798 A.2d 566 (2002).

Thus, the Court concluded that *voir dire* may reveal bias through two areas of inquiry: (1) whether jurors meet the minimum statutory qualifications for jury service; (2) whether a juror has a bias with respect "to the matter in hand or any collateral matter reasonably liable to unduly influence him." *Id.* at 9–10, 759 A.2d 819 (quoting *Davis v. State*, 333 Md. 27, 35–36, 633 A.2d 867 (1993)); *see also State v. Thomas*, 369 Md. 202, 207, 213, 798 A.2d 566 (2002); *Boyd*, 341 Md. at 436–37, 671 A.2d 33.

■ We note that, generally, trial courts are given broad discretion in the handling of *voir dire*. *Boyd v. State*, 341 Md. 431, 436, 671 A.2d 33 (1996); *see also Perry v. State*, 344 Md. 204, 218, 686 A.2d 274 (1996). "Despite the broad discretion of the trial judge, however, [the Court of Appeals] has defined a

limited arena of *mandatory* questioning on *voir dire.*" *Boyd,* 341 Md. at 436, 671 A.2d 33. The Court has stated:

> [I]n discussing what type of questions *must* be asked on *voir dire,* we have defined the proper focus of the *voir dire* examination to be only "the venireperson's state of mind and the existence of bias, prejudice, or preconception, *i.e.,* 'a mental state that gives rise to a cause for disqualification. . . .' "

*Id.* at 436–37, 671 A.2d 33 (quoting *Hill,* 339 Md. at 280, 661 A.2d 1164)(in turn citing *Davis,* 333 Md. at 37, 633 A.2d 867).

Appellant relies on the Court of Appeals' decision in *Fleming v. State,* 373 Md. 426, 818 A.2d 1117 (2003), to suggest that the circuit court erred in refusing to question the venire regarding the mere presence of drugs. *Fleming* involved a trial in which the petitioner was accused of possessing controlled dangerous substances with an intent to distribute. *Id.* at 429, 818 A.2d 1117. At the close of evidence, the defense requested that the court instruct the jury that a person's mere presence at the scene of a crime is not sufficient to prove that the individual committed a crime. *Id.* at 431, 818 A.2d 1117. The court refused to give the jury instruction on "mere presence," and the petitioner was convicted of possession with intent to distribute cocaine. *Id.* The Court stated:

> The purpose of the mere presence instruction in a drug case is to inform the jury that simply because the defendant was in close proximity to the drugs in question, it may not infer knowledge and intent to exercise dominion and control from that fact alone.

*Id.* at 439, 818 A.2d 1117.

In reversing the conviction, the Court noted that the instruction on mere presence was "both warranted by the evidence and not sufficiently covered by the instruction actually given." *Fleming v. State,* 373 Md. at 439, 818 A.2d 1117.

Appellant's reliance on *Fleming* is misplaced. In the case *sub judice,* the record does not indicate that appellant ever requested an instruction on "mere presence." Indeed, such an instruction was not given and appellant made no objections.

*Fleming* cannot be read to mandate that a court must question a jury on the "mere presence" doctrine in *voir dire*.

■ Despite this shortcoming, we may still determine that the question was mandated if its purpose was to reveal a specific bias. The proposed question seems to be formulated to determine whether jurors could properly accept legal instructions. Such questions are not mandated as they do not address the juror's state of mind. *See Wilson v. State*, 148 Md.App. 601, 658, 814 A.2d 1 (2002), *cert. denied*, 374 Md. 84, 821 A.2d 371 (2003)(noting that during *voir dire*, "it is inappropriate to instruct on the law at this stage of the case, or to question the jury as to whether or not they would be disposed to follow or apply stated rules of law"). We, however, leave open the possibility that the subject question may have revealed biases towards drugs. That topic was adequately addressed by the court and we shall not require the court to ask duplicative questions. Therefore, we find no error in the court's refusal to ask appellant's proposed question.

■ Appellant further alleges that the circuit court erred in failing to ask appellant's question number 12. Appellant contends that the question regarding weight to be given to the testimony of a criminal defendant is similar to mandatory inquiries regarding the weight to be given to the testimony of police officers. Essentially, the question seeks to determine whether jurors would have a bias against appellant merely because he was accused of a crime and therefore give his testimony less weight than the testimony of other witnesses such as police officers.

We first note that the court questioned the venire regarding biases in favor of or against the testimony of police officers. The issue was adequately addressed by the court. Second, the court asked the venire whether members would "tend to view the witnesses called by the defense with more or less skepticism than witnesses called by the State[.]" The question is a broader version of that requested by appellant. The actual question posed to the venire would reveal not only bias towards appellant's testimony but also towards those wit-

nesses testifying on appellant's behalf. Consequently, we find that the questions given by the court were sufficient to meet the mandatory requirements.

## IV. Sufficiency of the Evidence

Appellant finally contends that the circuit court erred in denying his motion for judgment because there was no evidence establishing that appellant had knowledge, or dominion and control over, the seized contraband or that he was maintaining the common nuisance. We do not agree.

In reviewing a sufficiency of the evidence argument, we must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Moye v. State,* 369 Md. 2, 12, 796 A.2d 821 (2002); *Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997); *State v. Albrecht,* 336 Md. 475, 478–79, 649 A.2d 336 (1994); *Stuckey v. State,* 141 Md.App. 143, 172, 784 A.2d 652 (2001) *cert. denied,* 368 Md. 241, 792 A.2d 1178 (2002). Notably, we shall not re-weigh the evidence, but merely determine whether the jury's verdict was rationally supported by direct or circumstantial evidence. *Moye,* 369 Md. at 12, 796 A.2d 821; *White v. State,* 363 Md. 150, 162, 767 A.2d 855 (2001); *Taylor,* 346 Md. at 457, 697 A.2d 462; *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998). Indeed, weighing the credibility of witnesses and resolving factual conflicts are tasks for the fact-finder. *Stanley,* 351 Md. at 750, 720 A.2d 323; *Hall v. State,* 119 Md.App. 377, 393, 705 A.2d 50 (1998). We shall begin our discussion by analyzing the elements of the crimes for which appellant was first convicted.

The jury found appellant guilty of possession of marijuana with intent to distribute pursuant to Section 287(a) of Article 27. Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article

27 § 287(a).[6] That Section provides:

Except as authorized by this subheading, it is unlawful for any person:

(a) To possess or administer to another any controlled dangerous substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice.

Section 277(s) defines "possession" as, "the exercise of actual or constructive dominion or control over a thing by one or more persons."

We have previously discussed the factors that a jury may consider in finding possession. In *Stuckey* we noted:

Possession may be constructive or actual, exclusive or joint. *See State v. Leach,* 296 Md. 591, 596, 463 A.2d 872 (1983). The following factors may be considered in determining joint or constructive possession:

1) proximity between the defendant and the contraband,

2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Stuckey,* 141 Md.App. at 173, 784 A.2d 652 (citing *Hall v. State,* 119 Md.App. 377, 394, 705 A.2d 50 (1998)).

The Court of Appeals has further noted in *Moye* that a jury's determination can be based on circumstantial evidence alone. The Court stated:

While a valid conviction may be based solely on circumstantial evidence, it cannot be sustained "on proof amounting

---

**6.** Article 27 Section 287 has been recodified at Section 5–601 of the Criminal Law Article. Md.Code (2002), § 5–601 of the Criminal Law Article.

only to strong suspicion or mere probability." *White*, 363 Md. at 163, 767 A.2d 855 (explaining that "circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient")(quoting *Taylor*, 346 Md. at 458, 697 A.2d 462)(internal quotations omitted). A conviction based solely on circumstantial evidence should be sustained only where "the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." *Wilson v. State*, 319 Md. 530, 537, 573 A.2d 831 (1990); *West v. State*, 312 Md. 197, 211–12, 539 A.2d 231 (1988).

*Moye v. State*, 369 Md. at 13, 796 A.2d 821; *see also Hall v. State*, 119 Md.App. 377, 393, 705 A.2d 50 (1998)(stating "[c]ircumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused").

 In the case at bar, the jury could have concluded that appellant possessed the marijuana from the facts that appellant was found in the residence during the search and seizure, mail addressed to appellant at the residence was seized during the search, significant amounts of packaged marijuana were found in a room containing men's clothing, and appellant had been observed by Deputy Burkhardt at the residence inviting people in on several occasions.

Although there was no contraband found on appellant's person, the jury could have determined appellant had constructive possession of the contraband from the circumstantial evidence noted above. The jury could properly infer possession from Deputy Burkhardt's testimony, appellant's presence alone in the residence, and the medical bill that appellant lived in the house. Furthermore, the jury could infer that appellant lived in the bedroom from which the marijuana was seized due to the discovery of men's clothing. Such an inference would satisfy the third factor set forth in *Stuckey*. A similar inference that appellant was frequently in the dwelling could also satisfy the second factor, that appellant had knowledge of the

contraband. Finally, Deputy Burkhardt's testimony that he witnessed what he believed to be drug related activity around the house, along with the presence of drugs in the home, could have led the jury to conclude that appellant was participating with others in the use or sale of the marijuana. Thus, the fourth *Stuckey* factor would be satisfied.

Appellant was also convicted of maintaining a common nuisance pursuant to Section 286(a)(5) of Article 27. Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.) Article 27, § 286(a)(5).[7] Appellant concedes that the evidence was legally sufficient to establish that the residence was a common nuisance, but merely contends that no evidence was presented to show he was the individual maintaining the nuisance.

As noted above, the jury could have rationally concluded that appellant lived at the residence and to some degree, either jointly or solely, possessed the marijuana. Furthermore, the jury could have inferred from Deputy Burkhardt's testimony that appellant was engaging in the use or sale of the marijuana with others. Consequently, the jury could have found that appellant was maintaining the nuisance.

We hold that the jury could have rationally concluded that appellant was living at the residence and had possession of the marijuana. From this conclusion, the jury also could have found that appellant, as a resident in the house, was maintaining a common nuisance.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

7. Article 27 Section 286 has been recodified at Section 5–605 of the Criminal Law Article. Md.Code (2002), § 5–605 of the Criminal Law Article.